UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROBERT E. MACLAREN,

                        Plaintiff,

v.

DAVID SMITH, West Pittston, Pennsylvania
Police Officer; PATRICK J. MCGURRIN,
Clark Summit, Pennsylvania Police Officer;
L. ADAME, Conroe Texas Public Safety
Trooper; FRANK J. BISIGNANO, Social              3:25-CV-1106
Security Admin. Conroe Texas; LEO J.                 (ECC/ML)
MCGALLICHER,USDA Huntsville Texas
Forest Service Law Enforcement Officer;
J. WALLER, Conroe Texas Police Officer;
JOH BUCKHOLTZ, Supervisor Conroe
Texas Police Officer; AUDREY TERRELL,
Montgomery County Texas Sheriff's Deputy;
A. BELL, Conroe Texas Police Officer; JOHN
SCHEINER, Walker County Texas Sheriff's
Deputy Sergeant; DENNIS EASLE, Utica New
York Police Officer; CHARLES M.
GOLDSTEIN, Utica Police Officer; JOSEPH
P. PETRIELLA, Delaware County New York
Sheriff's Deputy; HOBBS, Unadilla New York
State Trooper; RONELL HIGGINS, Connecticut
State Trooper Commissioner; AIMEE BILLS,
New York Forest Ranger; and MICHAEL A.
WALSH, Susquehanna County Pennsylvania
Trooper Commanding Officer,

                        Defendants.

_____

APPEARANCES:                              OF COUNSEL:

Robert E. MacLaren
  Plaintiff, *Pro Se*
3016 State Highway 7
Bainbridge, New York 13733

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Plaintiff Robert E. MacLaren ("Plaintiff") commenced this *pro se* action against Defendants David Smith, Patrick J. McGurrin, L. Adame, Frank J. Bisignano, Leo J. McGallicher, J. Waller, Joh Buckholtz, Audrey Terrell, A. Bell, John Scheiner, Dennis Easle, Charles M. Goldstein, Joseph P. Petriella, Hobbs, Ronell Higgins, Aimee Bills, and Michael A. Walsh (collectively "Defendants") alleging violations of his civil rights.[1]  (Dkt. Nos. 1, 6.) Plaintiff did not pay the filing fee and seeks leave to proceed *in forma pauperis* ("IFP").  For the reasons set forth below, I (1) grant Plaintiff's amended IFP application, and (2) recommend that the Complaint be dismissed in its entirety.

## I.    BACKGROUND

Construed as liberally[2] as possible, the Complaint alleges violations of Plaintiff's civil rights by Defendants.  (*See generally* Dkt. No. 1.)

The bombastic Complaint devotes approximately twelve pages to setting forth various laws, definitions, and elements of various claims.  (Dkt. No. 1 at 2-14.)  Thereafter, the Complaint outlines seventeen "claims" against Defendants pursuant to 42 U.S.C. § 1983, based

---

[1]    The Clerk of the Court is directed to update the docket to reflect the following changes: (1) Defendant Jane Doe Social Security Administration shall be updated to Frank J. Bisignano Social Security Administration; (2) Conroe Texas Police Officer John Doe shall be updated to Conroe Texas Police Officer Joh Buckholtz Supervisor; (3) the second Conroe Texas Police Officer John Doe shall be terminated as duplicative; (4) Connecticut State Trooper John Doe shall be updated to Connecticut State Trooper Commissioner Ronell Higgins; and (5) Susquehanna County Pennsylvania Trooper John Doe shall be updated to Susquehanna County Pennsylvania Trooper Commanding Officer Captain Michael A. Walsh.  (*Compare* Dkt. No. 1, *with* Dkt. No. 6.)

[2]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

on alleged incidents that occurred between the years 2004 and 2020.  (*See generally* Dkt. No. 1 at 15-60.)  The following list summarizes the allegations of those claims:

1. February 15, 2005, while in West Pittston, Pennsylvania, Plaintiff observed Defendant Smith—who was operating his police vehicle—commit various vehicle and traffic violations.  (Dkt. No. 1 at 15-16.)  Plaintiff flashed his high beams at Defendant Smith "in self defense."  (*Id*. at 16.)  The Complaint appears to allege that Plaintiff was charged with the vehicle and traffic violation of using his high beam and was ultimately convicted of the charge.  (*Id*. at 15-18.)

2. June 20, 2005, Plaintiff was arrested by two unnamed Clarks Summit, Pennsylvania Police Officers "in a fit of rage for drugs."  (Dkt. No. 1 at 19, 20.)  Plaintiff alleges that there was no probable cause for his arrest and "[d]irty cops always call the district attorney . . . before an arrest to get their approval and or the judge."  (*Id*. at 20.)

3. May 31, 2006, Plaintiff was living in his car in Texas when he received a summons to appear for court in Scranton, Pennsylvania.  (Dkt. No. 1 at 21-24.)  Plaintiff was arrested on a warrant when he went to transfer his license.  (*Id*. at 23.)  Plaintiff was in the county jail from May 31, 2006, to November 24, 2006, and was "forced to sign an agreement to never live and work in Pennsylvania ever again" or remain incarcerated "for years without a lawyer."  (Dkt. No. 1 at 21, 23.)  Plaintiff alleges that his car and possessions were not returned to him upon his release, which included a 2002 Ford Focus four door sedan.  (*Id*. at 21-22.)  Plaintiff alleges that the Ford Focus was auctioned off in Texas while Plaintiff was in the county jail.  (*Id*. at 21-22.)

4. April 12, 2006, Plaintiff's social security disability payments stopped while he was incarcerated at the Montgomery County, Texas Jail and when he sought to resume

payments, "[t]hey refused" until August 8, 2008.  (Dkt. No. 1 at 24-26.)  Plaintiff alleges that he was rendered homeless as a result of not receiving his disability payments.  (*Id*.)  In addition, Plaintiff alleges that limited transportation options made it difficult for him to attend his disability appeal hearing.  (*Id*.)

5. On an unspecified date while Plaintiff was homeless in Conroe, Texas, Defendant McGallicher stole Plaintiff's hunting knife.  (Dkt. No. 1 at 26-29.)

6. December 10, 2007, in Conroe, Texas, Plaintiff was arrested for assault despite not assaulting anyone.  (Dkt. No. 1 at 29-31.)  Plaintiff alleges that after he was handcuffed, the arresting officer punched him.  (*Id*.)

7. May 2008, in Conroe, Texas, Plaintiff was arrested for trespass at a local library even though he was not trespassing.  (Dkt. No. 1 at 31-33.)  Plaintiff's defense attorney pressured him to plead guilty.  (*Id*.)  Plaintiff alleges that an unspecified "[h]e" fabricated evidence and mischaracterized witness statements in the investigative reports.  (*Id*.)

8. November 12, 2008, in Montgomery County, Texas, Plaintiff was arrested for assault.  (Dkt. No.1 at 33-36.)  Plaintiff alleges that he did not receive his personal property (backpack that was full of clothes) back after the charge was dismissed on October 14, 2009.  (*Id*. at 34.)  Plaintiff alleges that an unspecified "defendant" mischaracterized witness statements.  (*Id*. at 35.)

9. February 10, 2009, in Conroe Texas, Plaintiff was arrested for assaulting a public servant.  (Dkt. No. 1 at 36-38.)  Plaintiff alleges that he was told by a Conroe Sheriff's Deputy that he could not live under the concrete staircase in the public parking garage so Plaintiff went to "the judge[']s office to discuss where he could sleep."  (*Id*. at 36.)  Plaintiff alleges that Judge Seiler "threw" Plaintiff out of his office and when Plaintiff was already

"in the outer office leaving," Defendant Bell assaulted Plaintiff "in a fit of rage for the judge and the cartel he was working part time for." (*Id*. at 37.) Plaintiff alleges that he was tried for assault and acquitted by a jury based on a video of the incident. (*Id*.)

10. September 10, 2008, in Huntsville, Texas, Plaintiff was arrested for public intoxication. (Dkt. No. 1 at 38-41.) Plaintiff alleges that the charge was dismissed in the interest of justice after Plaintiff was falsely imprisoned for twenty-one days in the county jail. (*Id*.) Plaintiff alleges that his arrest was solely to harass him and the result of "road rage and prosecutor rage." (*Id*. at 40.)

11. January 6, 2010, in Conroe, Texas, Plaintiff was arrested for harassment. (Dkt. No. 1 at 41-43.) Plaintiff alleges that he was falsely arrested after three dispatchers were "high on drugs making a false police report." (*Id*. at 41.) Plaintiff alleges that before his arrest, he went to a grocery store to buy food but the clerk packing his grocery bags stole two cans of food from Plaintiff's order. (*Id*. at 42.) Plaintiff alleges that he called 911 to report the theft but "the cops . . . . did not care what happened to [him]." (*Id*.) Plaintiff alleges that there was no evidence for his arrest "[j]ust a complete fabrication from the three dispatchers high on drugs." (*Id*.)

12. October 11, 2014, in Utica, New York, Plaintiff was sitting in his parked car when a man approached the car next to Plaintiff's, threw open his car door into the passenger side of Plaintiff's car, which created a dent in Plaintiff's car. (Dkt. No. 1 at 43-45.) Plaintiff alleges that Defendant Easle responded and lied in his police report, and, as a result, Plaintiff's insurance company would not pay for the repair, which was about $60 in value. (*Id*. at 44-45.)

5

13. August 12, 2017, in Delhi, New York, Plaintiff alleges that he was granted permission to camp at Lennox Forest and was falsely arrested for trespass. (Dkt. No. 1 at 45-51.) Plaintiff alleges that on September 9, 2017, police served him with a criminal summons charging him with trespass. (*Id*. at 47.) Plaintiff alleges that after six months, the prosecutor agreed to dismiss the trespass charge. (*Id*. at 48-49.) Plaintiff alleges that he called the court to report the witness's lies and the judge "turned into a fit of rage and put the case back on the calendar to teach [Plaintiff] a lesson about reporting liars." (*Id*. at 49.) Plaintiff alleges that, based on false testimony provided, the judge found him guilty of trespass and imposed a fine. (*Id*.)

14. August 21, 2018, in Delhi, New York, Plaintiff was issued a traffic ticket for lane violation. (Dkt. No. 1 at 51-55.) Plaintiff alleges that he was involved in a road rage interaction with third-party Mr. Miranda from New Jersey and at trial Defendant Hobbs deliberately fabricated evidence against Plaintiff. (*Id*. at 53.) Plaintiff alleges that he was incarcerated for nine days related to the traffic infraction. (*Id*.) Plaintiff alleges that Senior United States District Judge Lawrence E. Kahn was the appellate judge who handled Plaintiff's vehicle and traffic ticket. (*Id*. at 54.)

15. In the summer of 2004 or 2005, Plaintiff received a speeding ticket violation in Connecticut. (Dkt. No. 1 at 55-57.) Notwithstanding the allegation that this traffic infraction occurred in Connecticut, Plaintiff alleges that he was issued an appearance ticket before the Town of Kent Justice Court in Carmel, New York. (*Id*. at 55-56.) Plaintiff alleges that at an unspecified time, the case was dismissed and an unspecified "[h]e" fabricated evidence against Plaintiff including mischaracterizing witness statements. (*Id*.)

16. July 1, 2020, in Ohio, New York, Plaintiff was ticketed for cutting a tree owned by New York State. (Dkt. No. 1 at 57-58.) Plaintiff alleges the case was dismissed in February 2024. (*Id*.) Plaintiff alleges that he was walking down the street when two men "jumped out of the vehicle and began yelling at [him]" about someone cutting overgrown tree branches in a remote camping parking lot to make room for more vehicles to park. (*Id*. at 57.) Plaintiff alleges that Defendant Bills "showed up" at his campsite and stated that she had to arrest Plaintiff even though he did not do anything because the two men said so. (*Id*.) Plaintiff alleges that Defendant Bills deliberately fabricated evidence against him despite knowing that Plaintiff was innocent. (*Id*. at 58.)

17. In the summer of 2005, in New Milford, Pennsylvania, Plaintiff received a traffic ticket after being followed by a state trooper. (Dkt. No. 1 at 58-60.) Plaintiff alleges that the trooper had no probable cause or reasonable suspicion and fabricated evidence against Plaintiff despite knowing that Plaintiff was innocent. (*Id*. at 59.) Plaintiff alleges that the Milford town court judge believed the trooper in error and "[t]he two must have been high on drugs." (*Id*.)

As relief, Plaintiff seeks compensatory damages in the amount of $25,000,000.00 against Defendants. (Dkt. No. 1 at 60.)

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee

7

for commencing an action. 28 U.S.C. § 1915(a)(1).[3] After reviewing Plaintiff's amended IFP application (Dkt. No. 10), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's amended application to proceed IFP is granted.[4]

## III.     LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

---

[3]     The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]     Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]"  Fed. R. Civ. P. 10(b).  Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at \*2 (N.D.N.Y. Dec. 8, 2022) (citation omitted) (Stewart, M.J.), *rep't and rec. adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.).  A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed for the following four reasons.

First, Plaintiff's Complaint was drafted with a clear disregard for Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure which require, respectively, that a pleading include *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "a party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

The Complaint is sixty-pages long and asserts allegations regarding seventeen distinct interactions that Plaintiff had with state actors over the course of an approximately fifteen-year span of time, which have no commonality except for Plaintiff's involvement in each. (*See generally* Dkt. No. 1.) Plaintiff's claims are factually frivolous. By way of example, the Complaint alleges as follows:

> He was sucking down his large soft drink cup with a straw while he was driving with no hands. He was buzzing from all the caffeine. He was high on speed. The caffeine was his stimulant. A derivative of cocaine. . . . Caffeine dependence was his "caffeine-use disorder". His caffeine intoxication. His dependence. Caffeine is "habit-forming" and "deleterious" substance. He was in a fit of rage he got caught driving recklessly. He was reckless because he did not want to spill his soft drink and wanted to get high drinking it all. . . . Even when he got out of his cruiser he had to take another hard suck on his straw of sod caffeine. One last hit of speed before he approached me.

10

(Dkt. No. 1 at 16-17 [errors in original].)  Moreover, the Complaint alleges that Plaintiff appealed his vehicle and traffic infraction convictions but that the town judge

> denied it affirming the conviction that the dirty cop can do whatever he wants to do on the road . . . driving on the wrong side of the road while drinking his soft drink to get high.  It was a bromance between the two.  A gay moment of theirs.  Corrupting the truth and justice system of law.  So the two could party together.

(Dkt. No. 1 at 17-18.)  By way of further example, the Complaint frivolously alleges that

> There was no evidence.  Just a complete fabrication from the three dispatchers high on drugs.  The cops knew the complainants were lying.  If they wanted to party with them they would make a false arrest.  He listened to the 911 recording making a report of a theft.  They all knew I was from out of state and homeless from my voice.  I was not a drug dealer or user.  I did not sound texan or mexican.  The state of texas used to be part of Mexico until independence at the battle San Jacinto under General Houston.  He was not reelected as president of texas a third time because he was supporting the north in the civil war.

(Dkt. No. 1 at 42-43 [errors in original].)

As the Complaint is currently drafted, the Court is unable to meaningfully analyze, whether, and to what extent, Plaintiff has pleaded any colorable claim against Defendants.  (*See generally* Dkt. No. 1.)  Plaintiff's Complaint places an unjustified burden on the Court and, ultimately, on Defendants "'to select the relevant material from a mass of verbiage.'" *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)).

As a result, I recommend the complaint be dismissed as frivolous.  *See, e.g., Gillich v. Shields*, 18-CV-0486, 2018 WL 2926299 (N.D.N.Y. Apr. 30, 2018) (Peebles, M.J.), *report and recommendation adopted by* 2018 WL 2926302, at *3 (N.D.N.Y. Jun. 8, 2018) (D'Agostino, J.); *Canning v. Hofmann*, 15-CV-0493, 2015 WL 6690170, at *5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the

11

Complaint fails to state a claim upon which relief may be granted and is subject to dismissal.");
*see also Salahuddin*, 861 F.2d at 42 ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

Second, plaguing this action further is the fact that the statute of limitations has run on any civil rights claim Plaintiff seeks to assert under 42 U.S.C. § 1983—except the Sixteenth Claim—which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). With a three-year statute of limitations for § 1983 actions, it appears that the vast majority of the claims asserted in this action are not timely. *Bailey v. Tricolla*, 94-CV-4597, 1995 WL 548714, at *3 (E.D.N.Y. Sept. 12, 1995) (noting that in the absence of a congressional dictate as to a limitations period, we apply the most appropriate state statute of limitations, which for 1983 actions is the general personal injury statute setting forth a limitations period of three years); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (noting that the applicable limitations period for § 1983 actions in New York is three years).

As set forth above, Plaintiff's allegations relate to events that occurred between 2004 and 2020, more than three years before the commencement of this action on August 15, 2025.[5]

---

[5] However, Plaintiff's Sixteenth Claim appears to include a malicious prosecution claim and asserts that the underlying criminal charge was dismissed in 2024. (Dkt. No. 1 at 57-58.) The statute of limitations for malicious prosecution suits pursuant to 42 U.S.C. § 1983 begin to run when the prosecution terminates in the plaintiff's favor. *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 236 (N.D.N.Y. 2023) (Hurd, J.). As a result, any malicious prosecution claim related to the Sixteenth Claim would be timely.

Hence, in the alternative, Plaintiff's claims—except the Sixteenth Claim—should be dismissed as untimely.

Third, the proper venue for any claims that Plaintiff attempts to assert related to incidents that happened in Pennsylvania, Texas, or Connecticut, is not proper in this Court.

Venue in an action such as this is governed by 28 U.S.C. § 1391(b), which provides, in pertinent part, that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

28 U.S.C. § 1391(b). "In the event of a finding that venue is improper, a court is empowered to dismiss the action or, alternatively, if the interest of justice dictates, to transfer the case to any district in which it could have been brought." *Glover v. Goord*, 06-CV-1037, 2007 WL 2454193, at *6 (N.D.N.Y. Aug. 22, 2007) (Kahn, J., adopting report and recommendation of Peebles, M.J.) (citing 28 U.S.C. § 1406(a); *Goldawr, Inc. v. Heiman*, 369 U.S. 463, 465-67 (1962)).

The Complaint asserts claims related to alleged incidents and individuals located in Pennsylvania (First Claim, Second Claim, and Seventeenth Claim), Texas (Third Claim, Fourth Claim, Fifth Claim, Sixth Claim, Seventh Claim, Eighth Claim, Ninth Claim, Tenth Claim, and Eleventh Claim), and Connecticut (Fifteenth Claim). Since it appears that other District Courts would be the appropriate forum for these claims, I recommend in the alternative, that Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fifteenth, and Seventeenth Claims be dismissed pursuant to 28 U.S.C. § 1406(a).

Fourth, with respect to the Sixteenth Claim, which appears to assert a timely malicious prosecution claim, I recommend that in the alternative, it be dismissed because the Complaint fails to state a claim upon which relief may be granted.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law[.]" *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).  To prevail "on such a claim under both Section 1983 and New York State law, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (cleaned up; internal quotations and citations omitted).  In a malicious prosecution claim, "malice" is "'a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Fulton v. Robinson*, 289 F.3d 188, 198 (2d Cir. 2002) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)).

The Complaint fails to allege facts plausibly suggesting a reasonable inference of malice. Instead, Plaintiff "offers only conclusory allegations challenging the legitimacy of the prosecution, without any meaningful supporting factual detail, which is insufficient to state a claim." *Raysor v. Bracco*, 24-CV-1520, 2026 WL 1091138, at *5 (N.D.N.Y. Apr. 22, 2026) (Hurd, J.).

For each of these reasons, I recommend that the Complaint be dismissed in its entirety.

14

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

The issue with Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fifteenth, and Seventeenth Claims—lack of venue—is substantive, such that a better pleading will not cure the deficiencies. As a result, I recommend that Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fifteenth, and Seventeenth Claims be dismissed without leave to amend. However, out of deference to

---

[6]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

15

Plaintiff's *pro se* status and because a more detailed pleading could potentially cure the defects identified with respect to Plaintiff's Twelfth, Thirteenth, Fourteenth, and Sixteenth Claims, I recommend that those claims be dismissed with leave to replead.

ACCORDINGLY, it is

ORDERED that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 10) is GRANTED; and it is further

ORDERED that the Clerk of the Court shall update the docket to reflect the following changes: (1) Defendant Jane Doe Social Security Administration shall be updated to Frank J. Bisignano Social Security Administration; (2) Conroe Texas Police Officer John Doe shall be updated to Conroe Texas Police Officer Joh Buckholtz Supervisor; (3) the second Conroe Texas Police Officer John Doe shall be terminated as duplicative; (4) Connecticut State Trooper John Doe shall be updated to Connecticut State Trooper Commissioner Ronell Higgins; and (5) Susquehanna County Pennsylvania Trooper John Doe shall be updated to Susquehanna County Pennsylvania Trooper Commanding Officer Captain Michael A. Walsh; and it is further respectfully

RECOMMENDED that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED (1) without leave to replead** with respect to the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fifteenth, and Seventeenth Claims; and (2) **with leave to replead** with respect to the Twelfth, Thirteenth, Fourteenth, and Sixteenth Claims; and it is further

16

  **ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

  **NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: June 17, 2026
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[7]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:25-cv-01106-ECC-ML   Document 11   Filed 06/17/26   Page 18 of 67

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

1995 WL 548714
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

John BAILEY, etc., Plaintiff,
v.
Detective Philip TRICOLLA et alia, Defendants.

No. CV–94–4597 (CPS).
|
Sept. 12, 1995.

MEMORANDUM AND ORDER

SIFTON, Chief Judge.

**\*1** This is a civil rights action brought pro se by plaintiff John Bailey on behalf of himself and his minor daughter Natasha Bailey. The defendants are New York City Police Detective Philip Tricolla, Detective Douglas Hopkins, Detective Ortiz, Detective A. Semioli and an unnamed employee of Channel 9 News, "John Doe." Interpreting plaintiffs' complaint liberally, as required by *Haines v. Kerner,* 404 U.S. 519 (1972), several federal and state claims are stated. Plaintiffs assert claims under 42 U.S.C. § 1983 based on the Fourth, Eighth and Fourteenth Amendments. The following federal claims are asserted by John Bailey on his own behalf: (1) that his Fourth Amendment right was violated when his property was illegally searched and seized by Detectives Tricolla, Semioli, and others, (2) that his Eighth Amendment right was violated when the detectives failed to stop an attack on plaintiff while in their custody, and (3) that his 14th Amendment right to due process was violated when the detectives filed false police reports and perjured themselves testifying at his trial. The following state claims are also asserted: (1) that an unidentified man who reportedly worked for Channel 9 News battered plaintiff John Bailey while he was in the custody of Detectives Tricolla and Hopkins, (2) that the detectives engaged in abuse of process when they filed false police reports concerning plaintiff's conduct, and (3) on behalf of Natasha Bailey, plaintiff John Bailey asserts that Detective Ortiz took her from her mother and used excessive force to do so.

On February 10, 1995, plaintiff moved for leave to amend the complaint to name "Channel 9 Broadcasting Systems, any and all Affiliates and or Sponsor's and Newscasters, and anyone and everyone responsible for the broadcasting of the Channel

9 news story shown on the Channel 9 news on or about June 7, 1991, in which the plaintiff was assaulted both physically then verbally with false slanderous stat[e]ments that implied plaintiff's guilt."

There are two motions to dismiss before the Court. In the first, defendant Detectives Tricolla, Hopkins, Ortiz, and Semioli move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint is barred by the statute of limitations and that the defendants are immune from suit. In the second, defendant "John Doe," a Channel 9 News Reporter, moves to dismiss the complaint on two grounds. First, pursuant to Rule 12(b)(1), defendant Doe argues that this Court lacks subject matter jurisdiction over him because, as a news reporter, "John Doe" is not a "person" within the meaning of 42 U.S.C. § 1983. Second, pursuant to Rule 12(b)(6), Doe asserts that the complaint is barred by the statute of limitations.

On March 29, 1995, this Court received a sworn affidavit and supplementary exhibits from plaintiff John Bailey seeking to establish that his complaint was filed within the statute of limitations. Defendants have not had responded to this material. For the reasons set forth below, defendants' motions to dismiss certain claims based on absolute immunity are granted in part and denied in part. The city defendants' motion to dismiss the remaining claims statute of limitations grounds is denied. Defendant Doe's motion to dismiss the complaint as to himself is granted. Plaintiff's motion to amend the complaint as set forth in their motion is denied. Plaintiffs' motion for the appointment of counsel for the plaintiff Natasha Bailey is granted, and this action is stayed pending the appointment of counsel and guardian ad litem for the minor plaintiff.

BACKGROUND

**\*2** The following facts are taken from the plaintiff's complaint and, for the purposes of this motion, are presumed to be true and are regarded in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232 (1974). Plaintiffs' complaint alleges constitutional injury arising from several incidents. On June 6, 1991, plaintiff John Bailey was arrested by Detective Tricolla and "a great many other Detectives." At the time of the arrest, detectives searched and seized plaintiff's property including a bill of sale for a .25 caliber automatic, firearms, ammunition, a gun registration, a firearms lock box, several keys, two wallets, and other items. Detective

Case 3:25-cv-01106-ECC-ML    Document 11    Filed 06/17/26    Page 19 of 67

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

Semioli is specifically accused of stealing plaintiff's transit badge and buspass I.D. On the day of plaintiff's arrest, June 6, 1991, Detective Ortiz questioned Natasha Bailey, plaintiff John Bailey's daughter, and took her away from her mother by force. On June 7, 1991, between 2 and 5 a.m. plaintiff was being escorted in handcuffs by Detectives Tricolla and Hopkins through the main lobby of the 71st police precinct when plaintiff was hit by defendant "John Doe," a man he later learned was employed by Channel 9 News. Detectives also are accused of filing false police reports concerning John Bailey and Natasha Bailey and are accused of perjuring themselves when testifying at plaintiff's trial.

In the motion to amend the complaint, plaintiff alleges that these events were broadcast on Channel 9 News on or about June 7, 1991.

DISCUSSION

Subject Matter Jurisdiction

Defendant Doe has argued that this court lacks subject matter jurisdiction. [1] Plaintiffs filed their suit under 42 U.S.C. § 1983. Defendant Channel 9 news reporter "John Doe" contends that he is not a "person" within the meaning of § 1983, and that this Court therefore lacks subject matter jurisdiction over him. Defendant cites no case law to support this proposition but relies solely on the plain meaning of the statute. [2] This Court has also found nothing that would lend defendant's position support.

In one § 1983 case involving a journalist, *Fitzpatrick v. Wert,* 432 F.Supp. 601 (W.D.N.Y.1977), inmates sued news reporters who reported and commented on a statement made by the president of a prison guards' union. Plaintiffs alleged that defendant news reporters were involved in a conspiracy to deprive plaintiffs of equal protection under the law. *Id.* at 603. The suit was dismissed as frivolous. The reporters were held not liable under § 1983 because they were engaged in exercising their constitutionally protected rights. *Id.* However, neither in *Fitzpatrick* nor anywhere else in the extant case law has a court held that journalists were or were not "persons" within the meaning of the statute. The proper issue before the Court is whether defendant "John Doe" was acting "under color of any statute, ordinance, regulation, custom, or usage, of any State...." 42 U.S.C. § 1983. This is an issue more appropriately dealt with as a 12(b)(6) motion

to dismiss, since acting under color of state law is an element of pleading a § 1983 cause of action. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Moreover, when a district court has both a 12(b)(1) and 12(b)(6) motion before it, the "preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion." *Jones v. State of Georgia,* 725 F.2d 622 (11th Cir.) (citing *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897 (1981)), *cert. denied,* 469 U.S. 979 (1984). Accordingly, this Court has subject matter jurisdiction over this defendant.

**\*3** As to defendants Detective Philip Tricolla, Detective Douglas, Detective Hopkins, Detective Ortiz, and Detective A. Semioli, this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1343(a)(3) and (4) [3] which specifically provides jurisdiction over § 1983 actions. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 which provides district courts with jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

City Defendants' Statute of Limitations Defense

Defendants argue that the statute of limitations bars all of plaintiffs' claims except the allegation that detectives perjured themselves at the plaintiff's trial. There are three elements needed to determine whether a claim falls within the statute of limitations: (1) when the period of limitations accrued, (2) how long the period runs for, and (3) whether the period has been tolled by reason of incapacity. Federal law determines when an action accrues. *Morse v. University of Vt.,* 973 F.2d 122, 125 (2d Cir.1992); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920 (1981).

The statutory period for bringing a § 1983 action accrues on the day when plaintiff " 'knows or has reason to know' of the injury which is the basis of his action." *Pauk v. Board of Trustees,* 654 F.2d 856, 859 (2d Cir.) (quoting *Singleton* ), *cert. denied,* 455 U.S. 1000 (1982). Furthermore, the "proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8 (1991). Plaintiff's claims accrued on different dates. Plaintiff's property was searched and seized on June 6, 1991, at the time of his arrest, and on June 7, 1991, plaintiff was allegedly assaulted by defendant "John Doe" while in the custody of defendant Detectives Tricolla

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

Case 3:25-cv-01106-ECC-ML    Document 11    Filed 06/17/26    Page 20 of 67

and Hopkins. Plaintiff clearly had immediate knowledge of both of these events, and thus any cause of action arising therefrom accrued at that time.

Congress provided no explicit statute of limitations for § 1983 claims. As a result, there was much confusion as to which state limitations statute to apply until the Supreme Court, in *Wilson v. Garcia,* 471 U.S. 261 (1985), decided that the states' general personal injury statute of limitations should be applied to all § 1983 claims. *Id.* at 276. When a state has more that one personal injury statute of limitations, as is the case in New York, § 1983 claims are governed by the state's residual or general personal injury statute of limitations rather that by the statute of limitations for an enumerated intentional tort. *Owens v. Okure,* 488 U.S. 235 (1989). Under New York CPLR § 214, the general personal injury statute of limitations is three years. Therefore, in New York, a plaintiff must commence his § 1983 action within three years of the date the cause of action accrues. *See Perez v. Police Dept. of the City of New York,* 872 F.Supp. 49, 51 (S.D.N.Y.1994).

 **\*4**  Plaintiff John Bailey signed and notarized his complaint on May 16, 1994. However, the complaint was date-stamped "received" on July 11, 1994, by the Southern District pro se office and stamped as filed with the Southern District of New York on September 13, 1994. In a supplemental affidavit filed on March 29, 1995, plaintiff attests that he prepared and mailed the complaint to the Southern District for filing on May 17, 1994, and requested a return receipt. Plaintiff has annexed to his affidavit a copy of his certified mail receipt, addressed to the U.S. District Court at 40 Centre St., New York, N.Y. and showing a post office stamp of May 17, and a copy of the returned receipt, signed and dated May 26, 1994.

Rule 3 of the Federal Rules of Civil Procedure determines when a civil rights action commences. It simply states "[a] civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3. Incarcerated litigants are afforded more leeway when they file pleadings because of their inability to file papers personally with the clerk of the court. Thus, for example, litigants may file a complaint by handing it to prison authorities, *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (discussing *Houston v. Lack,* 487 U.S. 266 (1988)), *modified by* 25 F.3d 81 (2d Cir.1994); *Lewis v. Richmond City Police Dept.,* 947 F.2d 733, 734 (4th Cir.1991), or may file an appeal in the same manner. *LaBounty v. Adler,* 933 F.2d 121 (2d Cir.1991).

At least one court has held that a return receipt dated within the limitations period suffices to prove receipt by the clerk and therefore filing, even if the clerk's office stamps the pleading "received" or "filed" on later dates. *Cooper v. City of Ashland,* 871 F.2d 104, 105 (9th Cir.1989). Generally, file stamps are far from dispositive of a statute of limitations issue. In *Mays v. New York City Police Dept,* 701 F.Supp. 80, 83 n. 6 (S.D.N.Y.1988), *aff'd,* 888 F.2d 1376 (2d Cir.1989), it was held that "[w]hen a pro se plaintiff's complaint is received by the Court within the statutory period, as here, and official filing is delayed by the Court's consideration of plaintiff's request for leave to proceed *in forma pauperis,* the action will be deemed timely for purposes of the statute of limitations." *See also Salahuddin v. Harris,* 657 F.Supp. 369, 373 n. 3 (S.D.N.Y.1987). The key inquiry is whether the clerk's office had actual control; papers placed in a night depository box after hours on the last day of the limitations period are deemed timely notwithstanding a local rule that such papers would be deemed filed the following day, because the papers placed in the box were held to be in the clerk's "actual possession." *Greenwood v. State of N.Y., Office of Mental Health,* 842 F.2d 636, 639 (2d Cir.1988); *see also Martin v. Demma,* 831 F.2d 69, 71 (5th Cir.1987) (district court's acceptance of date on clerk's stamps as dispositive was error). Plaintiff's production of the post office return receipt showing that his complaint was received at the Southern District clerk's office within the limitations period meets his burden of producing evidence to show that his papers were timely filed sufficient to warrant denial of the motion to dismiss at this time. The denial of this motion is without prejudice if discovery uncovers additional evidence relating to this matter.

Alleged False Police Reports and Perjured Testimony

 **\*5**  Plaintiff also claims that defendant detectives filed false police reports and lied while testifying at his trial. Even if timely filed, these claims cannot withstand a motion to dismiss.

Generally, police officers have available a defense of only qualified immunity. *Pierson v. Ray,* 386 U.S. 547 (1967). However, defendant detectives are correct that officers serving as witnesses have absolute immunity from civil liability for their testimony. *Briscoe v. LaHue,* 460 U.S. 325 (1983). As the Supreme Court held in *Briscoe,* "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise —who were integral parts of the judicial process." *Id.* at 335.

Section 1983 does not abrogate this traditional immunity. Examining the legislative history of the Ku Klux Klan Act of 1871, 17 Stat. 13 (now codified at 42 U.S.C. §§ 1983 and 1985, *inter alia* ), the Supreme Court found nothing to "support petitioners' contention that Congress intended to provide a § 1 damages remedy against police officers or any other witnesses." *Id.* at 341. The Court specifically noted that, although "some defendants might indeed be unjustly convicted on the basis of knowingly false testimony by police officers ... the alternative of limiting the official's immunity would disserve the broader public interest." *Id.* at 345. In light of *Briscoe,* defendant detectives are absolutely immune from this § 1983 action with respect to their testimony at plaintiff's trial.

Plaintiff's allegations that the police officers filed false police reports against him also fails to state a claim. "[T]he mere filing of the false police reports, by themselves and without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." *Landrigan v. City of Warwick,* 628 F.2d 736, 744–45 (1st Cir.1980). Plaintiff's claims could be cast as a cause of action for malicious prosecution. Allegations of malicious prosecution do not ordinarily state a claim under § 1983. *Easterhouse v. Felder,* 910 F.2d 1387, 1407 (7th Cir.1990), *cert. denied,* 498 U.S. 1067 (1991); *Gunderson v. Schueter,* 904 F.2d 407, 409 (8th Cir.1990); *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The filing of false police reports may bring a claim for malicious prosecution within the scope of § 1983. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). However, an essential element of such a claim is that the proceeding must terminate in plaintiff's favor, and plaintiff has not alleged this key fact. *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994). If plaintiff were convicted but believes that he was wrongly convicted, his proper remedy is not a claim for damages but rather an appeal, a collateral attack in state court, or a habeas petition in federal court. Plaintiffs thus have no cognizable § 1983 claim for the alleged filing of false reports. [4]

**\*6** Since the only other argument advanced by the city defendants is the statute of limitations and since that argument fails as noted above, their motion to dismiss the complaint is granted only with respect to the alleged false reports and false testimony and is denied in all other respects.

Claims Against Defendant "John Doe"

The "under color" of law provision of § 1983 does not require that the defendant be an officer of the State. *Dennis v. Sparks,* 449 U.S. 24 (1980). However, for the conduct of a private party to fall within the "under color" language, that conduct must be supported by state action, usually in the form of a conspiracy. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 163 (1970) (defendant restaurant owner who refused to serve Caucasian woman in the company of African American students was acting under color of law within the meaning of § 1983 because of his participation in a conspiracy with local police to deprive plaintiff of her rights). State support which transforms private action into state action may take many forms. In plaintiff's case, the only support given to "John Doe" was the inaction of the detectives who witnessed the battery. This level of support, if it can be called support at all, cannot qualify as state action because the complaint fails to allege that the attack was the result of a joint venture with the detectives. *See United States v. Price,* 383 U.S. 787 (1966). In *Price,* private actors charged with conspiring with local police to injure three men came within the scope of the statute because the private persons acted as willful participants in a joint activity with the state or its agents. *Id.* at 794. The Second Circuit has repeatedly held that § 1983 conspiracy claims must "contain more than mere conclusory allegations ... [and that] a plaintiff should not plead mere evidence; he should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy.' " *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993) (quoting 2A Moore's Federal Practice ¶ 8.17[6], at 8–109 to 8–110 (2d ed. 1992)).

Even though pro se complaints are read very broadly under *Haines,* the Court is nevertheless limited to addressing the face of a pleading. *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985). A claim of conspiracy between defendant detectives and defendant Channel 9 news reporter cannot be inferred from the facts presented in the complaint, and the complaint is dismissed as to this John Doe defendant.

Plaintiff's state law claims against defendant Doe are also dismissed Under any reading of the complaint, these claims can only be for assault, libel, or some other intentional tort. The state law claims are subject to New York's one-year statute of limitations for intentional torts, CPLR § 215, rather than the three-year period for negligence actions or § 1983 claims. This period has clearly expired as to all claims against Doe. Accordingly, the complaint is dismissed as to defendant Doe.

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

Case 3:25-cv-01106-ECC-ML    Document 11    Filed 06/17/26    Page 22 of 67

**\*7** For similar reasons, plaintiff's motion to amend the complaint is also denied. The amendment seeks to name Channel 9 Broadcasting Systems and others as defendants in a slander or libel action. These actions are also subject to the one-year statute of limitations. Since the proposed amendment would be futile, plaintiff's motion is denied.

### Natasha Bailey

Natasha Bailey is represented by her father, plaintiff John Bailey. Under the Federal Rules of Civil Procedure, capacity to sue is determined by the law of the state in which the district court is held. Fed.R.Civ.P. 17(b). Rule 17(b) reads in relevant part: "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile ... [i]n all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held...." Wright and Miller comment on this rule, noting that state law determines the capacity of the guardian as well as the plaintiff: "[a]s has been seen in the preceding sections, the first two sentences of Rule 17(b) deal with an individual suing on his own behalf and with the capacity of corporations. The third sentence of the rule provides that in all other cases capacity to sue or be sued is to be determined by the law of the state in which the district court is held. This portion of the rule applies principally to individuals who are suing in a representative capacity, including executors and administrators, guardians, trustees, and receivers appointed by a state court." Wright & Miller, Federal Practice and Procedure: *Civil* § 1565. Under New York law, an infant [5] cannot prosecute an action in person. The Federal Rules of Civil Procedure allow a representative to sue on behalf of an infant. Fed.R.Civ.P. 17(c). However under New York law the infant must appear by a parent who

has "legal custody" [6] or guardian ad litem. "Unless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property or, if there is no such guardian, by a parent having legal custody, or, if there is no such parent by another person or agency having legal custody...." N.Y.Civ.Prac.L. & R. 1201 (McKinney 1995). To have legal custody, a parent must have physical custody. *Otero on Behalf of Otero v. State,* 159 Misc.2d 35, 602 N.Y.S.2d 501, 502 (1993). An incarcerated parent cannot have legal custody and therefore may not bring suit on behalf of an infant. *Id.* at 502. Since plaintiff John Bailey is currently incarcerated at Franklin Correctional Facility in Malone, N.Y., he is not competent to bring this action on his daughter's behalf. [7]

For the foregoing reasons defendant Channel 9 news reporter "John Doe's" motion to dismiss is granted. Plaintiffs' claims against the defendant detectives arising out of their testimony at his trial or from the alleged filing of false police reports are also dismissed. Plaintiff's motion to amend the complaint is denied. The claims on behalf of Natasha Bailey are dismissed without prejudice. Plaintiff's applications for appointment of *pro bono* counsel are denied subject to renewal upon a showing sufficient to permit the determination required by *Cooper v. S. Sargenti Co., Inc.,* 877 F.2d 170 (2d Cir.1989), concerning the merits of the case.

**\*8** The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

### All Citations

Not Reported in F.Supp., 1995 WL 548714

---

### Footnotes

1    Though "John Doe" is not specifically identified in the complaint, process was served on Channel 9 at their offices at 445 Park Avenue, New York City, and was accepted by a person named Brenda Woodman. This Court has received a motion and supporting affidavit filed by attorneys for WWOR (Channel 9) on behalf of "John Doe." The affidavit states that "Defendant 'John Doe,' Channel 9 News Reporter, respectfully requests that this court dismiss plaintiff's Complaint." The defendant has not raised objections to either service or personal jurisdiction but, instead, to subject matter and to the merits of the case. By filing this motion, then, he has consented to personal jurisdiction.

2    The statute reads in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress." 42 U.S.C. § 1983 (1988).

3    "(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ...

    (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

    (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

4    The Court declines to consider the instant complaint as a habeas petition under 18 U.S.C. § 2254, because it is impossible to determine whether the claims were properly exhausted. If Bailey intends to seek habeas relief, he should file an appropriate petition.

5    An infant is defined as a "person who has not attained the age of eighteen years." N.Y.Civ.Prac.L. & R. 105 (McKinney 1994).

6    See *Villafane v. Banner,* 87 Misc.2d 1037, 387 N.Y.S.2d 183 (1976).

7    Generally, no statute of limitations will run against an infant until he or she attains the age of 18, the age of majority in New York. Section 208 of the NYCPLR in pertinent part reads, "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies...." However, in an action for personal injuries sustained by the infant, the statute of limitations does not bar the adult representative from bringing suit on behalf of the infant. *Hilburger v. Cottman,* 196 Misc. 106, 91 N.Y.S.2d 721 (1949) ("to compel an infant ... to await h[er] majority before bringing an action because [s]he had failed to act within the generally prescribed statutory period would create an anomalous situation ... an infant's right of action is continuing and suit may be brought at any time during his minority."). Here, since John Bailey cannot legally represent Natasha because of his incarceration, another representative is required.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

1995 WL 548714
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

John BAILEY, etc., Plaintiff,
v.
Detective Philip TRICOLLA et alia, Defendants.

No. CV–94–4597 (CPS).
|
Sept. 12, 1995.

MEMORANDUM AND ORDER

SIFTON, Chief Judge.

**\*1** This is a civil rights action brought pro se by plaintiff John Bailey on behalf of himself and his minor daughter Natasha Bailey. The defendants are New York City Police Detective Philip Tricolla, Detective Douglas Hopkins, Detective Ortiz, Detective A. Semioli and an unnamed employee of Channel 9 News, "John Doe." Interpreting plaintiffs' complaint liberally, as required by *Haines v. Kerner,* 404 U.S. 519 (1972), several federal and state claims are stated. Plaintiffs assert claims under 42 U.S.C. § 1983 based on the Fourth, Eighth and Fourteenth Amendments. The following federal claims are asserted by John Bailey on his own behalf: (1) that his Fourth Amendment right was violated when his property was illegally searched and seized by Detectives Tricolla, Semioli, and others, (2) that his Eighth Amendment right was violated when the detectives failed to stop an attack on plaintiff while in their custody, and (3) that his 14th Amendment right to due process was violated when the detectives filed false police reports and perjured themselves testifying at his trial. The following state claims are also asserted: (1) that an unidentified man who reportedly worked for Channel 9 News battered plaintiff John Bailey while he was in the custody of Detectives Tricolla and Hopkins, (2) that the detectives engaged in abuse of process when they filed false police reports concerning plaintiff's conduct, and (3) on behalf of Natasha Bailey, plaintiff John Bailey asserts that Detective Ortiz took her from her mother and used excessive force to do so.

On February 10, 1995, plaintiff moved for leave to amend the complaint to name "Channel 9 Broadcasting Systems, any and all Affiliates and or Sponsor's and Newscasters, and anyone and everyone responsible for the broadcasting of the Channel

9 news story shown on the Channel 9 news on or about June 7, 1991, in which the plaintiff was assaulted both physically then verbally with false slanderous stat[e]ments that implied plaintiff's guilt."

There are two motions to dismiss before the Court. In the first, defendant Detectives Tricolla, Hopkins, Ortiz, and Semioli move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint is barred by the statute of limitations and that the defendants are immune from suit. In the second, defendant "John Doe," a Channel 9 News Reporter, moves to dismiss the complaint on two grounds. First, pursuant to Rule 12(b)(1), defendant Doe argues that this Court lacks subject matter jurisdiction over him because, as a news reporter, "John Doe" is not a "person" within the meaning of 42 U.S.C. § 1983. Second, pursuant to Rule 12(b)(6), Doe asserts that the complaint is barred by the statute of limitations.

On March 29, 1995, this Court received a sworn affidavit and supplementary exhibits from plaintiff John Bailey seeking to establish that his complaint was filed within the statute of limitations. Defendants have not had responded to this material. For the reasons set forth below, defendants' motions to dismiss certain claims based on absolute immunity are granted in part and denied in part. The city defendants' motion to dismiss the remaining claims statute of limitations grounds is denied. Defendant Doe's motion to dismiss the complaint as to himself is granted. Plaintiff's motion to amend the complaint as set forth in their motion is denied. Plaintiffs' motion for the appointment of counsel for the plaintiff Natasha Bailey is granted, and this action is stayed pending the appointment of counsel and guardian ad litem for the minor plaintiff.

BACKGROUND

**\*2** The following facts are taken from the plaintiff's complaint and, for the purposes of this motion, are presumed to be true and are regarded in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232 (1974). Plaintiffs' complaint alleges constitutional injury arising from several incidents. On June 6, 1991, plaintiff John Bailey was arrested by Detective Tricolla and "a great many other Detectives." At the time of the arrest, detectives searched and seized plaintiff's property including a bill of sale for a .25 caliber automatic, firearms, ammunition, a gun registration, a firearms lock box, several keys, two wallets, and other items. Detective

Semioli is specifically accused of stealing plaintiff's transit badge and buspass I.D. On the day of plaintiff's arrest, June 6, 1991, Detective Ortiz questioned Natasha Bailey, plaintiff John Bailey's daughter, and took her away from her mother by force. On June 7, 1991, between 2 and 5 a.m. plaintiff was being escorted in handcuffs by Detectives Tricolla and Hopkins through the main lobby of the 71st police precinct when plaintiff was hit by defendant "John Doe," a man he later learned was employed by Channel 9 News. Detectives also are accused of filing false police reports concerning John Bailey and Natasha Bailey and are accused of perjuring themselves when testifying at plaintiff's trial.

In the motion to amend the complaint, plaintiff alleges that these events were broadcast on Channel 9 News on or about June 7, 1991.

DISCUSSION

Subject Matter Jurisdiction

Defendant Doe has argued that this court lacks subject matter jurisdiction. [1] Plaintiffs filed their suit under 42 U.S.C. § 1983. Defendant Channel 9 news reporter "John Doe" contends that he is not a "person" within the meaning of § 1983, and that this Court therefore lacks subject matter jurisdiction over him. Defendant cites no case law to support this proposition but relies solely on the plain meaning of the statute. [2] This Court has also found nothing that would lend defendant's position support.

In one § 1983 case involving a journalist, *Fitzpatrick v. Wert,* 432 F.Supp. 601 (W.D.N.Y.1977), inmates sued news reporters who reported and commented on a statement made by the president of a prison guards' union. Plaintiffs alleged that defendant news reporters were involved in a conspiracy to deprive plaintiffs of equal protection under the law. *Id.* at 603. The suit was dismissed as frivolous. The reporters were held not liable under § 1983 because they were engaged in exercising their constitutionally protected rights. *Id.* However, neither in *Fitzpatrick* nor anywhere else in the extant case law has a court held that journalists were or were not "persons" within the meaning of the statute. The proper issue before the Court is whether defendant "John Doe" was acting "under color of any statute, ordinance, regulation, custom, or usage, of any State...." 42 U.S.C. § 1983. This is an issue more appropriately dealt with as a 12(b)(6) motion

to dismiss, since acting under color of state law is an element of pleading a § 1983 cause of action. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Moreover, when a district court has both a 12(b)(1) and 12(b)(6) motion before it, the "preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion." *Jones v. State of Georgia,* 725 F.2d 622 (11th Cir.) (citing *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897 (1981)), *cert. denied,* 469 U.S. 979 (1984). Accordingly, this Court has subject matter jurisdiction over this defendant.

**\*3** As to defendants Detective Philip Tricolla, Detective Douglas, Detective Hopkins, Detective Ortiz, and Detective A. Semioli, this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1343(a)(3) and (4) [3] which specifically provides jurisdiction over § 1983 actions. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 which provides district courts with jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

City Defendants' Statute of Limitations Defense

Defendants argue that the statute of limitations bars all of plaintiffs' claims except the allegation that detectives perjured themselves at the plaintiff's trial. There are three elements needed to determine whether a claim falls within the statute of limitations: (1) when the period of limitations accrued, (2) how long the period runs for, and (3) whether the period has been tolled by reason of incapacity. Federal law determines when an action accrues. *Morse v. University of Vt.,* 973 F.2d 122, 125 (2d Cir.1992); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920 (1981).

The statutory period for bringing a § 1983 action accrues on the day when plaintiff " 'knows or has reason to know' of the injury which is the basis of his action." *Pauk v. Board of Trustees,* 654 F.2d 856, 859 (2d Cir.) (quoting *Singleton* ), *cert. denied,* 455 U.S. 1000 (1982). Furthermore, the "proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8 (1991). Plaintiff's claims accrued on different dates. Plaintiff's property was searched and seized on June 6, 1991, at the time of his arrest, and on June 7, 1991, plaintiff was allegedly assaulted by defendant "John Doe" while in the custody of defendant Detectives Tricolla

and Hopkins. Plaintiff clearly had immediate knowledge of both of these events, and thus any cause of action arising therefrom accrued at that time.

Congress provided no explicit statute of limitations for § 1983 claims. As a result, there was much confusion as to which state limitations statute to apply until the Supreme Court, in *Wilson v. Garcia,* 471 U.S. 261 (1985), decided that the states' general personal injury statute of limitations should be applied to all § 1983 claims. *Id.* at 276. When a state has more that one personal injury statute of limitations, as is the case in New York, § 1983 claims are governed by the state's residual or general personal injury statute of limitations rather that by the statute of limitations for an enumerated intentional tort. *Owens v. Okure,* 488 U.S. 235 (1989). Under New York CPLR § 214, the general personal injury statute of limitations is three years. Therefore, in New York, a plaintiff must commence his § 1983 action within three years of the date the cause of action accrues. *See Perez v. Police Dept. of the City of New York,* 872 F.Supp. 49, 51 (S.D.N.Y.1994).

**\*4** Plaintiff John Bailey signed and notarized his complaint on May 16, 1994. However, the complaint was date-stamped "received" on July 11, 1994, by the Southern District pro se office and stamped as filed with the Southern District of New York on September 13, 1994. In a supplemental affidavit filed on March 29, 1995, plaintiff attests that he prepared and mailed the complaint to the Southern District for filing on May 17, 1994, and requested a return receipt. Plaintiff has annexed to his affidavit a copy of his certified mail receipt, addressed to the U.S. District Court at 40 Centre St., New York, N.Y. and showing a post office stamp of May 17, and a copy of the returned receipt, signed and dated May 26, 1994.

Rule 3 of the Federal Rules of Civil Procedure determines when a civil rights action commences. It simply states "[a] civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3. Incarcerated litigants are afforded more leeway when they file pleadings because of their inability to file papers personally with the clerk of the court. Thus, for example, litigants may file a complaint by handing it to prison authorities, *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (discussing *Houston v. Lack,* 487 U.S. 266 (1988)), *modified by* 25 F.3d 81 (2d Cir.1994); *Lewis v. Richmond City Police Dept.,* 947 F.2d 733, 734 (4th Cir.1991), or may file an appeal in the same manner. *LaBounty v. Adler,* 933 F.2d 121 (2d Cir.1991).

At least one court has held that a return receipt dated within the limitations period suffices to prove receipt by the clerk and therefore filing, even if the clerk's office stamps the pleading "received" or "filed" on later dates. *Cooper v. City of Ashland,* 871 F.2d 104, 105 (9th Cir.1989). Generally, file stamps are far from dispositive of a statute of limitations issue. In *Mays v. New York City Police Dept,* 701 F.Supp. 80, 83 n. 6 (S.D.N.Y.1988), *aff'd,* 888 F.2d 1376 (2d Cir.1989), it was held that "[w]hen a pro se plaintiff's complaint is received by the Court within the statutory period, as here, and official filing is delayed by the Court's consideration of plaintiff's request for leave to proceed *in forma pauperis,* the action will be deemed timely for purposes of the statute of limitations." *See also Salahuddin v. Harris,* 657 F.Supp. 369, 373 n. 3 (S.D.N.Y.1987). The key inquiry is whether the clerk's office had actual control; papers placed in a night depository box after hours on the last day of the limitations period are deemed timely notwithstanding a local rule that such papers would be deemed filed the following day, because the papers placed in the box were held to be in the clerk's "actual possession." *Greenwood v. State of N.Y., Office of Mental Health,* 842 F.2d 636, 639 (2d Cir.1988); *see also Martin v. Demma,* 831 F.2d 69, 71 (5th Cir.1987) (district court's acceptance of date on clerk's stamps as dispositive was error). Plaintiff's production of the post office return receipt showing that his complaint was received at the Southern District clerk's office within the limitations period meets his burden of producing evidence to show that his papers were timely filed sufficient to warrant denial of the motion to dismiss at this time. The denial of this motion is without prejudice if discovery uncovers additional evidence relating to this matter.

Alleged False Police Reports and Perjured Testimony

**\*5** Plaintiff also claims that defendant detectives filed false police reports and lied while testifying at his trial. Even if timely filed, these claims cannot withstand a motion to dismiss.

Generally, police officers have available a defense of only qualified immunity. *Pierson v. Ray,* 386 U.S. 547 (1967). However, defendant detectives are correct that officers serving as witnesses have absolute immunity from civil liability for their testimony. *Briscoe v. LaHue,* 460 U.S. 325 (1983). As the Supreme Court held in *Briscoe,* "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise —who were integral parts of the judicial process." *Id.* at 335.

Case 3:25-cv-01106-ECC-ML Document 11 Filed 06/17/26 Page 27 of 67

Section 1983 does not abrogate this traditional immunity. Examining the legislative history of the Ku Klux Klan Act of 1871, 17 Stat. 13 (now codified at 42 U.S.C. §§ 1983 and 1985, *inter alia* ), the Supreme Court found nothing to "support petitioners' contention that Congress intended to provide a § 1 damages remedy against police officers or any other witnesses." *Id.* at 341. The Court specifically noted that, although "some defendants might indeed be unjustly convicted on the basis of knowingly false testimony by police officers ... the alternative of limiting the official's immunity would disserve the broader public interest." *Id.* at 345. In light of *Briscoe,* defendant detectives are absolutely immune from this § 1983 action with respect to their testimony at plaintiff's trial.

Plaintiff's allegations that the police officers filed false police reports against him also fails to state a claim. "[T]he mere filing of the false police reports, by themselves and without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." *Landrigan v. City of Warwick,* 628 F.2d 736, 744–45 (1st Cir.1980). Plaintiff's claims could be cast as a cause of action for malicious prosecution. Allegations of malicious prosecution do not ordinarily state a claim under § 1983. *Easterhouse v. Felder,* 910 F.2d 1387, 1407 (7th Cir.1990), *cert. denied,* 498 U.S. 1067 (1991); *Gunderson v. Schueter,* 904 F.2d 407, 409 (8th Cir.1990); *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The filing of false police reports may bring a claim for malicious prosecution within the scope of § 1983. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). However, an essential element of such a claim is that the proceeding must terminate in plaintiff's favor, and plaintiff has not alleged this key fact. *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994). If plaintiff were convicted but believes that he was wrongly convicted, his proper remedy is not a claim for damages but rather an appeal, a collateral attack in state court, or a habeas petition in federal court. Plaintiffs thus have no cognizable § 1983 claim for the alleged filing of false reports. [4]

 **\*6** Since the only other argument advanced by the city defendants is the statute of limitations and since that argument fails as noted above, their motion to dismiss the complaint is granted only with respect to the alleged false reports and false testimony and is denied in all other respects.

Claims Against Defendant "John Doe"

The "under color" of law provision of § 1983 does not require that the defendant be an officer of the State. *Dennis v. Sparks,* 449 U.S. 24 (1980). However, for the conduct of a private party to fall within the "under color" language, that conduct must be supported by state action, usually in the form of a conspiracy. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 163 (1970) (defendant restaurant owner who refused to serve Caucasian woman in the company of African American students was acting under color of law within the meaning of § 1983 because of his participation in a conspiracy with local police to deprive plaintiff of her rights). State support which transforms private action into state action may take many forms. In plaintiff's case, the only support given to "John Doe" was the inaction of the detectives who witnessed the battery. This level of support, if it can be called support at all, cannot qualify as state action because the complaint fails to allege that the attack was the result of a joint venture with the detectives. *See United States v. Price,* 383 U.S. 787 (1966). In *Price,* private actors charged with conspiring with local police to injure three men came within the scope of the statute because the private persons acted as willful participants in a joint activity with the state or its agents. *Id.* at 794. The Second Circuit has repeatedly held that § 1983 conspiracy claims must "contain more than mere conclusory allegations ... [and that] a plaintiff should not plead mere evidence; he should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy.' " *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993) (quoting 2A Moore's Federal Practice ¶ 8.17[6], at 8–109 to 8–110 (2d ed. 1992)).

Even though pro se complaints are read very broadly under *Haines,* the Court is nevertheless limited to addressing the face of a pleading. *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985). A claim of conspiracy between defendant detectives and defendant Channel 9 news reporter cannot be inferred from the facts presented in the complaint, and the complaint is dismissed as to this John Doe defendant.

Plaintiff's state law claims against defendant Doe are also dismissed Under any reading of the complaint, these claims can only be for assault, libel, or some other intentional tort. The state law claims are subject to New York's one-year statute of limitations for intentional torts, CPLR § 215, rather than the three-year period for negligence actions or § 1983 claims. This period has clearly expired as to all claims against Doe. Accordingly, the complaint is dismissed as to defendant Doe.

Case 3:25-cv-01106-ECC-ML   Document 11   Filed 06/17/26   Page 28 of 67

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

**\*7** For similar reasons, plaintiff's motion to amend the complaint is also denied. The amendment seeks to name Channel 9 Broadcasting Systems and others as defendants in a slander or libel action. These actions are also subject to the one-year statute of limitations. Since the proposed amendment would be futile, plaintiff's motion is denied.

Natasha Bailey

Natasha Bailey is represented by her father, plaintiff John Bailey. Under the Federal Rules of Civil Procedure, capacity to sue is determined by the law of the state in which the district court is held. Fed.R.Civ.P. 17(b). Rule 17(b) reads in relevant part: "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile ... [i]n all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held...." Wright and Miller comment on this rule, noting that state law determines the capacity of the guardian as well as the plaintiff: "[a]s has been seen in the preceding sections, the first two sentences of Rule 17(b) deal with an individual suing on his own behalf and with the capacity of corporations. The third sentence of the rule provides that in all other cases capacity to sue or be sued is to be determined by the law of the state in which the district court is held. This portion of the rule applies principally to individuals who are suing in a representative capacity, including executors and administrators, guardians, trustees, and receivers appointed by a state court." Wright & Miller, Federal Practice and Procedure: *Civil* § 1565. Under New York law, an infant [5] cannot prosecute an action in person. The Federal Rules of Civil Procedure allow a representative to sue on behalf of an infant. Fed.R.Civ.P. 17(c). However under New York law the infant must appear by a parent who

has "legal custody" [6] or guardian ad litem. "Unless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property or, if there is no such guardian, by a parent having legal custody, or, if there is no such parent by another person or agency having legal custody...." N.Y.Civ.Prac.L. & R. 1201 (McKinney 1995). To have legal custody, a parent must have physical custody. *Otero on Behalf of Otero v. State,* 159 Misc.2d 35, 602 N.Y.S.2d 501, 502 (1993). An incarcerated parent cannot have legal custody and therefore may not bring suit on behalf of an infant. *Id.* at 502. Since plaintiff John Bailey is currently incarcerated at Franklin Correctional Facility in Malone, N.Y., he is not competent to bring this action on his daughter's behalf. [7]

For the foregoing reasons defendant Channel 9 news reporter "John Doe's" motion to dismiss is granted. Plaintiffs' claims against the defendant detectives arising out of their testimony at his trial or from the alleged filing of false police reports are also dismissed. Plaintiff's motion to amend the complaint is denied. The claims on behalf of Natasha Bailey are dismissed without prejudice. Plaintiff's applications for appointment of *pro bono* counsel are denied subject to renewal upon a showing sufficient to permit the determination required by *Cooper v. S. Sargenti Co., Inc.,* 877 F.2d 170 (2d Cir.1989), concerning the merits of the case.

**\*8** The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 548714

---

**Footnotes**

1    Though "John Doe" is not specifically identified in the complaint, process was served on Channel 9 at their offices at 445 Park Avenue, New York City, and was accepted by a person named Brenda Woodman. This Court has received a motion and supporting affidavit filed by attorneys for WWOR (Channel 9) on behalf of "John Doe." The affidavit states that "Defendant 'John Doe,' Channel 9 News Reporter, respectfully requests that this court dismiss plaintiff's Complaint." The defendant has not raised objections to either service or personal jurisdiction but, instead, to subject matter and to the merits of the case. By filing this motion, then, he has consented to personal jurisdiction.

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

Case 3:25-cv-01106-ECC-ML   Document 11   Filed 06/17/26   Page 29 of 67

2   The statute reads in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress." 42 U.S.C. § 1983 (1988).

3   "(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ...

> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

4   The Court declines to consider the instant complaint as a habeas petition under 18 U.S.C. § 2254, because it is impossible to determine whether the claims were properly exhausted. If Bailey intends to seek habeas relief, he should file an appropriate petition.

5   An infant is defined as a "person who has not attained the age of eighteen years." N.Y.Civ.Prac.L. & R. 105 (McKinney 1994).

6   *See Villafane v. Banner,* 87 Misc.2d 1037, 387 N.Y.S.2d 183 (1976).

7   Generally, no statute of limitations will run against an infant until he or she attains the age of 18, the age of majority in New York. Section 208 of the NYCPLR in pertinent part reads, "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies...." However, in an action for personal injuries sustained by the infant, the statute of limitations does not bar the adult representative from bringing suit on behalf of the infant. *Hilburger v. Cottman,* 196 Misc. 106, 91 N.Y.S.2d 721 (1949) ("to compel an infant ... to await h[er] majority before bringing an action because [s]he had failed to act within the generally prescribed statutory period would create an anomalous situation ... an infant's right of action is continuing and suit may be brought at any time during his minority."). Here, since John Bailey cannot legally represent Natasha because of his incarceration, another representative is required.

---

**End of Document**                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Case 3:25-cv-01106-ECC-ML   Document 11   Filed 06/17/26   Page 31 of 67

Brown v. Peters, Not Reported in F.Supp. (1997)

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:25-cv-01106-ECC-ML   Document 11   Filed 06/17/26   Page 32 of 67

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In

October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:25-cv-01106-ECC-ML   Document 11   Filed 06/17/26   Page 35 of 67

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

**Footnotes**

1       I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6690170
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Erin CANNING, Plaintiff,

v.

Bruno HOFMANN and Bonnie Hofmann, Defendants.
Erin Canning, Plaintiff,

v.

John Canning and Judy Canning, Defendants.

Nos. 1:15–CV–0493, 1:15–CV–0895.
|
Signed Nov. 2, 2015.

**Attorneys and Law Firms**

Erin Canning, Saratoga Springs, NY, pro se. [1]

Hodgson, Russ Law Firm, Jeffrey T. Fiut, Esq., Michelle L. Merola, Esq., of Counsel, Buffalo, NY, for Defendants Bruno & Bonnie Hofmann.

No Appearances, [1] for Defendants John and Judy Canning.

### *DECISION and ORDER*

DAVID N. HURD, District Judge.

**\*1** *Pro se* plaintiff Erin Canning brought an action against defendants Bruno and Bonnie Hofmann in case number 1:15–CV–0493 seeking relief pursuant to five separate federal statutes (the "Lead Case Complaint"). On May 29, 2015, defendants in the Lead Case filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 12. On July 22, 2015, plaintiff filed a separate action against John and Judy Canning in case number 1:15–CV0895 (the "Member Case Complaint"). On September 16, 2015, the Honorable Randolph F. Treece, United States Magistrate Judge, advised by Report–Recommendation that: (i) defendants' motion to dismiss the Lead Case Complaint be granted and (ii) plaintiffs member case complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). While plaintiff did not submit objections to the Report–Recommendation, on September 21, 2015, she filed a 112 page document entitled "Evidence Documents Enclosed and Update", which has been reviewed

and considered for the purposes of this Decision & Order. *See* ECF No. 37.

Based upon a de novo review of the portions of the Report–Recommendation to which plaintiff objected, the Report–Recommendation is accepted in whole. *See* 28 U.S.C. § 636(b)(1).

Therefore, it is ORDERED that:

1. Defendants' Motion to Dismiss the Lead Case Complaint (ECF No. 12) is **GRANTED;** and

2. Plaintiff's Member Case Complaint is **DISMISSED** without leave to amend forfailure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for lack of subject matter jurisdiction; and

3. The consolidated action is hereby closed without consideration of plaintiff's pending motion for injunctive relief (ECF No. 34), motion to expedite relief (ECF No. 39), motion to serve court marshall papers (ECF No. 40) and motion for bill payment (ECF No. 41), as such motions are moot and unnecessary; and it is further ordered that

4. The Clerk serve a copy of this Decision and Order upon plaintiff in accordance with the Local Rules.

The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

#### I. BACKGROUND

*Pro se* Plaintiff Erin Canning initially brought this action in the Southern District of New York. Dkt. No. 2, Compl. However, in reviewing the "difficult to understand" pleading, the Honorable Loretta A. Preska, Chief United States District Judge, *sua sponte* transferred the matter to this District, noting that none of the named Defendants are alleged to reside in the Southern District of New York and that the events purportedly giving rise to Plaintiff's claims occurred in Saratoga County, which is located in the Northern District of New York. Dkt.

No. 4. Subsequent to the transfer to this District, Defendants Bruno and Bonnie Hofmann waived service of the Complaint and, on May 29, 2015, filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 6 & 12. Plaintiff opposes that Motion,[2] Dkt. No. 15, and Defendants submitted a Reply thereto, Dkt. No. 17. Following these filings, the undersigned granted Plaintiff's request to proceed with this matter *in forma pauperis,* but, because Defendants had waived service, the Court did not direct the Marshal to effect service of process upon them. Dkt. No. 14, Text Order, dated June 3, 2015.

**\*2** Thereafter, on July 22, 2015, Plaintiff filed a separate action against John and Judy Canning; Plaintiff also sought permission to proceed with that matter *in forma pauperis.* Civ. No. 1:15–CV895 (DNH/RFT), Dkt. Nos. 1, Compl., & 2, Mot. Upon reviewing the pleading, the undersigned found that Plaintiff's two actions were sufficiently related, as defined by the District's General Order 12, and in the interest of judicial economy, consolidated the two cases. *Id.* at Dkt. No. 3. Because Plaintiff had already been granted permission to proceed *in forma pauperis* in the initial action, now deemed the Lead Case, the Court found Plaintiff's subsequent *in forma pauperis* motion to be unnecessary. On August 19, 2015, the Honorable David N. Hurd, United States District Judge, referred the case to this Court for an initial review and Report–Recommendation on the pending Motion to Dismiss, which the Court performs below. Dkt. No. 33.

## II. DISCUSSION

### A. Lead Case Against Bruno and Bonnie Hofmann

As noted above, Defendants Bruno and Bonnie Hofmann have moved to dismiss the Lead Complaint. Dkt. No. 12.

#### 1. Motion to Dismiss Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (*overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, ... matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski,* 1997 WL 394667, at \*2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (citing FED. R. CIV. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Indus. ., Inc. v. Sum Holding L.P.,* 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id.*

**\*3** The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 754, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. at 697 (citing *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at

678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bed All. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. at 679–80.

With this standard in tow, we consider the plausibility of Plaintiff s Complaint.

### 2. Analysis

The Complaint against the Hofmanns in the Lead Case is, as Chief Judge Preska pointed out, difficult to understand. Canning's Complaint spans eighty-six pages. Dkt. No. 2, Lead Compl. The initial four pages consist of a *pro forma* complaint ostensibly used by the Southern District of New York for litigants seeking to bring a civil action. From there, the Complaint veers wildly with pages upon pages of medical records, financial account statements, invoices, and other documentation. Apparently, and as best as the Court can surmise, Plaintiff had resided in the Wellington Tower Condominiums, but after circulating a letter to the residents complaining of being harassed by the building superintendent she was removed from the residence. It appears that the residence was owned by Mr. Hofmann, who is possibly Plaintiff s step-father, yet, it is unclear the precise contours of the personal and/or business relationship between Plaintiff and Defendants. Following Plaintiff s "eviction" from the Wellington Tower Condominiums, she was placed in her the care of her father, John Canning, in the Capital District area.

**\*4** By her Complaint, Plaintiff seeks to bring the following five causes of action against the Defendants, for which she seeks compensatory damages and other forms of relief: (1) 42 U.S.C. § 1985(2); (2) 42 U.S.C. § 1985(3); (3) 42 U.S.C. § 2000aa–6; (4) 18 U .S.C. § 1201; and (5) 18 U.S.C. § 1503. As explained below, none of these purported causes of action are cognizable here.

### a. *Section 1985 Claims*

Section 1985 claims concern conspiracies to interfere with an individual's civil rights. The portions of the statute raised by Plaintiff are Sections 1985(2) and 1985(3); the former deals with a conspiracy to obstruct justice, while the latter concerns conspiracies to deprive persons of rights or privileges, neither of which are applicable in the instant case.

By its very terms, Section 1985(2) seeks to prevent instances where justice is obstructed in a federal court proceeding by way of witness or juror intimidation. *Haddle v. Garrison,* 525 U.S. 121, 125, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) ("The gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or retaliation against witnesses in federal-court proceedings"). There are no allegations in the Complaint that lead the Court to infer that there was any pending federal court proceeding, that any witness or juror was intimidated, or that Plaintiff was in any way affected or injured. Thus, clearly there is no claim set forth in the Complaint for a violation of Section 1985(2).

To recover under Section 1985(3), a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999) (citations omitted). "In this context, 'classbased animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dept. of Corr. Serv's.,* 115 F.Supp.2d 307, 316 (N.D.N.Y.2000) (citations omitted). Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 390–91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (cited in *Hill v. Philip Morris USA,* 2004 WL 1065548, at \*4 (S.D.N.Y. May 11, 2004)).

Again, there are no allegations in the Complaint which indicate that Plaintiff was the victim of such discrimination nor that the named Defendants conspired with the aim of discrimination.

Accordingly, the Court recommends that Defendants' Motion to Dismiss be **granted** as to Plaintiff's claims pursuant to 42 U.S.C. §§ 1985(2) and (3).

### b. *42 U.S.C. § 2000aa–6*

**\*5** Next, Plaintiff asserts that she brings a cause of action pursuant to 42 U.S.C. § 2000aa–6, which is a part of the Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa–2000aa–12 ("PPA"). The PPA pertains to conduct by governmental employees in connection with the investigation or prosecution of criminal offenses. *See* 42 U.S.C. § 2000aa. "The PPA specifically provides that persons aggrieved under the PPA shall have a civil cause[ ] of action against the United States, against a State which has waived its sovereign immunity, or against any other governmental unit." *Makas v. New York State Dep't of Motor Vehicles,* 1998 WL 146251, at *3 (N.D.N.Y. Mar.23, 1998) (citing 42 U.S.C. § 2000aa–6(a)(1)). Because this statue authorizes a claim against government officials, Plaintiff could not maintain a claim against the Hofmanns, who are private citizens. No where has Plaintiff alleged that she was the subject of a government search/seizure in connection with an investigation or prosecution of a criminal defense, nor how the Hofmanns participated in any way. Accordingly, we recommend that Defendants' Motion be **granted** and such claims be dismissed.

### c. *Title 18 Claims*

Turning next to Plaintiff's claims purportedly brought pursuant to 18 U.S.C. §§ 1201 and 1503, the Court notes that such Title concerns "Crimes and Criminal Procedure" and Plaintiff cannot bring a civil action to enforce criminal statutes. *See Leeke v. Timmerman,* 454 U.S. 83, 85, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981) (noting that a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994) (noting that criminal statutes do not provide private causes of action). The two sections raised by Plaintiff concern the crimes of

kidnapping and obstruction of justice, neither of which allow for private causes of action. Accordingly, we recommend **granting** Defendants' Motion and dismissing such claims.

### 3. Conclusion on Lead Complaint

While the Court recognizes that Plaintiff is proceeding *pro se* and that this requires the Court to treat her pleadings with a certain degree of liberality, *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008), we nevertheless find, as explained above, that the Lead Complaint is wholly insufficient to state any plausible claim for relief or to allow any named Defendant to make a reasonable response. Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal. *See Ashcroft v. Iqbal,* 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' ") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557).

### B. Member Case Against John and Judy Canning

**\*6** Next we turn to the civil action initiated by Plaintiff against John and Judy Canning. For this Member case, the Court has allowed Plaintiff to proceed *in forma pauperis* but has not yet reviewed the Complaint to ensure that a proper cause of action is stated. The Court engages in that *sua sponte* review below.

### 1. *Section 1915(e) Standard of Review*

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v.*

*Kelly,* 912 F.2d 605, 606 (2d Cir.1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendantunlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir.2009).

 **\*7** Furthermore, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz,* 1998 WL 832708, at \*1 (S.D.N.Y. Nov.30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16(N.D.N.Y.1995) (McAvoy) (other citations omitted)). Rule 8 also provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a).

Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence-and each defense other than a denial-must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).

The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna,* 1992 WL 392597, at \*3 (E.D. Pa. Dec. 17, 1992 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)). A complaint that fails to comply with these Rules presents too heavy a burden for the defendant in shaping a comprehensive defense, provides no meaningful basis for a court to assess the sufficiency of a plaintiff's claims, and may properly be dismissed by the court. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy). As the Second Circuit has stated, "[w]hen a complaint does not comply with the requirement that it be short and plain, the Court has the power, on its own initiative, ... to dismiss the complaint." *Salhuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligble that its true substance, if any, is well disguised." *Hudson v. Artuz,* 1998 WL 832708, at \*2 (internal quotation marks and citation omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. *See Simmons v. Abruzzo,* 49 F.3d 83, 86–87 (2d Cir.1995).

## 2. Analysis

**\*8** The Court first notes that Plaintiff's Complaint in the Member action is not in any acceptable form as proscribed by the Federal Rules of Civil Procedure and this District's Local Rules of Practice. *See* Member Case, 1:15–CV–895, Dkt. No. 1, Compl. The Complaint consists of thirteen typed pages of disjointed narrative and conclusory accusations. Therein, Plaintiff recounts a history of her dealings with her mother and stepfather (Hofmann Defendants) and with her father and stepmother (Canning Defendants). Plaintiff recounts the confrontation with the Hofmann Defendants wherein she was evicted from her residence in Wellington Tower, but this time accuses the Canning Defendants of colluding with the Hofmann Defendants in order to intimidate Plaintiff and gain control of her possessions. It seems that for much of the pleading, Plaintiff is airing her personal family gripes as to the Cannings and the Hofmanns.

According to the Member Complaint, Plaintiff brings forth claims against the Cannings for violations of various criminal statutes under Title 18 of the United States Code, New York State Penal Code, as well as for violations of her rights guaranteed by the First and Fourteenth Amendment, and by the Disability Civil Rights Act of 1964. In terms of relief, Plaintiff seeks a slew of injunctive relief, and has also filed a separate Motion in the Lead case seeking injunctive relief.

### a. Criminal Statutes

As with her claims in the Lead action, Plaintiff cannot maintain any civil cause of action pursuant to the criminal statutes listed in Title 18 of the United States Code. Thus, for the reasons stated above (*see supra* Part II.A.2.c), the Court recommends dismissing that portion of the Member Complaint that purports to bring a civil action under the United States criminal statutes: 18 U.S.C. §§ 241, 249, and 2261 A. Similarly, there is no civil cause of action recognized in 19 U.S.C. § 1592, which deals with penalties for fraud, gross negligence, and negligence in the context of customs duties and smuggling goods into the United States. By its very terms, the statute authorizes, *inter alia,* the United States Custom Service to pursue violations of the statute and assess any penalties. 19 U.S.C. § 1592(b)(1) & (2). It is entirely unclear why Plaintiff is seeking to invoke this statute and what, if any, facts alleged would give rise to the involvement

of the Customs Service, thus this claim should be dismissed. And lastly, the Court notes that Plaintiff cannot pursue a civil action against private individuals under New York's Penal Law § 135.65, entitled Coercion in the First Degree, nor under § 135.00, entitled Unlawful Imprisonment, Kidnapping, and Custodial Interference; Definitions of Terms. As with the United States criminal statutes, State criminal statutes cannot be enforced by private citizens through a civil action, thus we would recommend dismissal of such claim.

### b. Constitutional Violations

Plaintiff asserts that the Canning Defendants violated her rights secured by the United States Constitution under Amendments One and Fourteen. Presumably the, Plaintiff seeks to bring a cause of action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States **by a person acting under color of state law.** *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting 42 U.S.C. § 1983); *see also Myers v. Wollowitz,* 1995 WL 236245, at \*2 (N.D.N.Y. Apr.10, 1995) (Section 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 1995 WL 743719, at \*2 (N.D.N.Y. Dec.6, 1995) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (citation omitted). Traditionally, the definition of acting under color of state law requires that the Section 1983 defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (internal quotation marks and citation omitted)).

**\*9** There are no allegations in the Member Complaint which would allow this Court to reasonably infer that the Canning Defendants acted, if at all, under the authority of state law. Thus, to the extent Plaintiff is attempting to assert constitutional violations against the Canning Defendants, such claim must fail.

### c. Disability Civil Rights Act of 1964

And, finally, with regard to Plaintiff's passing reference to violations under the "Disability Civil Rights Act of 1964 Disability Act of 1990", it appears to the Court that Plaintiff may be attempting to bring a claim under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.,* although it is entirely unclear to the Court under which section of that Act she seeks to pursue. Title II of the ADA provides, in pertinent part, that

> [n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The term "public entity" is defined to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(B). To state a claim under Title II of the ADA, a plaintiff must allege "that (1) he or she is a qualified individual with a disability; (2) ... the defendants are subject to the ADA; and (3) ... plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Shomo v. City of New York,* 579 F.3d 176, 185 (2d Cir.2009) (internal quotation marks and alterations omitted).
No where in the Complaint can the Court find any allegations indicating that Plaintiff suffers from a disability, as defined by that Act, or that Defendants were subject to the Act. Indeed, Plaintiff spends a considerable amount of time decrying Defendant John Canning for suggesting that she is mentally infirm. Accordingly, the Court recommends that such claim also be dismissed.

### *3. Diversity Jurisdiction*

Plaintiff alleges certain factual allegations that suggest that she is suing the Canning Defendants for State law torts, such as fraud or defamation. Having reviewed Plaintiff's

Member Complaint and finding that it fails to raise any federal question causes of action, the Court, in consideration of Plaintiff's *pro se* status, will assess whether there is an additional basis for the Court's jurisdiction over this matter, namely-diversity jurisdiction. *See City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 512, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (noting that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its own jurisdiction) *see also Alliance of Am. Ins. v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (challenge to subject matter jurisdiction cannot be waived); FED.R.CIV.P. 12(h)(3) (court may raisebasis of its jurisdiction *sua sponte* ). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin,* 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). The party seeking to invoke the court's jurisdiction bears the burden of "demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co., Inc. v. SCS Commc'n, Inc.,* 251 F.3d 315, 322–23 (2d Cir.2001) (citations omitted).

**\*10** For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan,* 1999 WL 38256, at \*2 (S.D.N.Y. Jan.28, 1999) (quoting 15 James Wm. Moore et al., Moore's Federal Practice ¶ 102.34[2] (3d ed.1998)).
It appears that the Plaintiff, Defendant John Canning, and Defendant Judy Canning all reside in New York State. As such, we do not have complete diversity because the Defendants are citizens of the same State as Plaintiff. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136

L.Ed.2d 437 (1996) (noting that the diversity statute "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant"). Because Plaintiff has failed to establish the basis for the Court's subject matter jurisdiction, dismissal is mandated.

### III. CONCLUSION

As explained above, the Court has reviewed both the Lead and Member Complaints and find that Plaintiff has failed to state a claim upon which relief could be granted and is subject to dismissal. *See Ashcroft v. Iqbal,* 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' ") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557). Under such circumstances, the Court would normally grant a *pro se* litigant, such as Plaintiff, an opportunity to amend the Complaint in order to avoid dismissal. *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002). However, such measures are not warranted here because, as explained above, any amendment would be futile. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (dismissal is appropriate where leave to amend would be futile).

Because the Court recommends dismissal of the entire action, consideration of Plaintiff's Motion for Injunctive Relief (Dkt. No. 34) is unnecessary.

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss the Lead Complaint (Dkt. No. 12) be **GRANTED** and the matter be dismissed; and it is further

**RECOMMENDED,** that Plaintiff's Member Complaint be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and for lack of subject matter jurisdiction; and it is further

**RECOMMENDED,** that if the District Court adopts the above recommendations, the entire consolidated action be closed without consideration of Plaintiff's pending Motion for Injunctive Relief (Dkt. No. 34); and it is further

**\*11  ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such obj ections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WTTHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Serv's.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Filed Sept. 16, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6690170

---

### Footnotes

1    Defendants John and Judy Canning have not yet been served in this matter and, therefore, have not appeared.

1    Defendants John and Judy Canning have not yet been served in this matter.

2    Plaintiff submitted multiple filings seemingly in support of her opposition to the Hofmanns' dispositive motion. *See* Dkt. Nos. 15, Pl.'s Resp., dated June 5, 2015; 18, Lt., dated June 25, 2015; 23, Supp. Resp., undated, unsigned; & 32, Supp. Resp., undated. The Court has taken into consideration Plaintiff's *pro se* status, and has reviewed all the submissions provided by Plaintiff. The Court notes, however, that in accordance with the standard applicable when reviewing a Motion to Dismiss, the Court will not consider any document that was not originally included nor referenced in the original complaint. Nor, in light of its incognizable format, will

the Court construe any subsequent filing to be an amended complaint nor an attempt to amend the operative pleading.

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-01106-ECC-ML    Document 11    Filed 06/17/26    Page 45 of 67

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

**I. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

Case 3:25-cv-01106-ECC-ML    Document 11    Filed 06/17/26    Page 46 of 67

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

### B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the

Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the

defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

### All Citations

Not Reported in Fed. Supp., 2022 WL 17517312

---

## Footnotes

1   Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3   If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-01106-ECC-ML   Document 11   Filed 06/17/26   Page 48 of 67

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

 **\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

 **\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)

Case 3:25-cv-01106-ECC-ML    Document 11    Filed 06/17/26    Page 49 of 67

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2926299
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard GILLICH, Plaintiff,
v.
Beverly J. SHIELDS, Delaware
County Treasurer, et al., Defendants.

Civil Action No. 3:18-CV-0486 (MAD/DEP)
|
Signed 04/30/2018

**Attorneys and Law Firms**

RICHARD GILLICH, 22 Gregory Street, Danbury, CT 06811, pro se.

ORDER, REPORT, AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

**\*1** This is an action brought by *pro se* plaintiff Richard Gillich against the State of New York, Delaware County, the Delaware County Treasurer, the Delaware County Attorney, and two Assistant Delaware County Attorneys. Accompanying plaintiff's complaint is a motion requesting permission to proceed in the action *in forma pauperis* ("IFP"). Those documents have been forwarded to me for review. For the reasons set forth below, plaintiff's IFP application is denied, and I recommend that his complaint be dismissed, with leave to replead.

I. BACKGROUND
Plaintiff commenced this action on April 9, 2018 in the United States District Court for the Eastern District of New York. Dkt. No. 1. His complaint, which is entitled "Constitutional Tort, and Common-Law Torts Complaint," is exceedingly difficult to construe and is rife with nonsensical rhetoric. *See generally id.* Nonetheless, it appears—though it is far from clear—that plaintiff's claims stem from defendants' efforts to foreclose upon a property in which he has an interest for the non-payment of taxes. *Id.* Based upon the fact that the property in question is located in Delaware County, which lies within the Northern District of New York, the matter was subsequently transferred to this court by order issued by

United States District Judge Pamela K. Chen on April 18, 2018. Dkt. No. 4.

II. DISCUSSION

A. Plaintiff's IFP Application
Filed together with plaintiff's complaint is a motion for leave to proceed IFP. Dkt. No. 2. In support of his request, plaintiff asserts that he is unable to pay the required fees, and claims that, in any event, as a *pro se* plaintiff he cannot be forced to pay a fee for commencing an action in a federal district court. [1] Dkt. No. 2. Plaintiff's naked claim that he is unable to pay the required filing fee is unsupported by any affidavit or other reliable information concerning his finances.

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. §§ 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required filing fee. [2] 28 U.S.C. § 1915(a)(1). Pursuant to section 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

**\*2** The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). Section 1915 only provides that a court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States,* 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) ); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915(a) does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick,* 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, section 1915 requires that a plaintiff submit an affidavit reflecting all of his assets. 28 U.S.C. § 1915(a)(1). Without the submission of a completed

financial affidavit, a plaintiff's application is incomplete, and this defect alone warrants denial of the IFP application. *See, e.g., U.S. v. Copen*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission by the party of an affidavit made as required by [28 U.S.C. § 1915]."); *accord, Bey v. Syracuse Univ.*, 155 F.R.D. 413, 414 (N.D.N.Y. May 1994) (Scullin, J.).

In this case, without an affidavit detailing the basis for plaintiff's claim that he is unable to pay the applicable filing fee, the court is unable to make a meaningful assessment of whether he should be granted IFP status. Accordingly, his IFP motion is denied without leave to refile with the requisite supporting documentation.

### B. Plaintiff's Complaint

#### 1. Standard of Review

Ordinarily, the denial of plaintiff's IFP application would end the court's discussion. Section 1915, however, authorizes the dismissal of the action *sua sponte*, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based

on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis

As was noted above in part I. of this report, plaintiff's complaint is comprised of forty-one pages of incoherent prose. By way of one small example, in the section of the complaint intended to describe the "nature of the case," plaintiff alleges as follows:

> 14. Notice to the Court: My complaint against these Defendants as listed above hereafter tortfeasors:
>
> 15. For high crimes and Violation of U.S. Constitution and the Bill of rights the police officer tortfeasor a/k/a DELAWARE COUNTY TREASURER officer's order, and Illegal Tax Codes under color of law and the trespass on the holder in due course unalienable rights and private property ancestral land in the name Forfeiture of land under Tax Codes (18 U.S. Code § 242—Deprivation of rights under color of law)[.]

Dkt. No. 1 at 6 (errors in original). While the court has no reason to doubt that plaintiff's intentions in commencing this action are sincere, his complaint is nevertheless nonsensical by any objective measure and is not drafted in a manner that allows the court to meaningfully analyze any purported cause of action in accordance with 28 U.S.C. § 1915(e). Accordingly, I recommend the complaint be dismissed as frivolous. *See Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at *5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

### C. Whether to Permit Amendment

 **\*4** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. d1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice

so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, due to the incomprehensible allegations in plaintiff's complaint, it is not clear whether better pleading would permit plaintiff to assert a cognizable cause of action. Nevertheless, out of deference to his *pro se* status, I recommend plaintiff be granted leave to amend his complaint.

If plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as defendants are involved in the allegedly unlawful activity. Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted) ).

### III. SUMMARY, ORDER, AND RECOMMENDATION

For the reasons set forth above, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 2) is DENIED without prejudice. In the event this report is adopted and plaintiff is granted leave to amend his complaint, any amended complaint must be accompanied by either (1) the full filing fee or (2) a new request to proceed in this action without prepayment of the filing fees. Any new IFP

application must be supported by appropriate documentation as described above in this report; and it is further respectfully

**\*5** RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[3] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk is respectfully directed to serve a copy of this order, report, and recommendation on the *pro se* plaintiff in accordance with the court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2926299

---

**Footnotes**

1    Despite plaintiff's claim to the contrary, only in a narrow set of civil cases (which are not applicable here) must litigants be permitted to access the court without prepayment of filing fees. *See, e.g., M.L.B. V. S.L.J.,* 519 U.S. 102, 113 (1996).

2    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    If you are proceeding pro se and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2926302
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard GILLICH, Plaintiff,
v.
Beverly J. SHIELDS, Delaware
County Treasurer, et al., Defendants.

3:18-CV-0486 (MAD/DEP)
|
Signed 06/08/2018

**Attorneys and Law Firms**

RICHARD GILLICH, 22 Gregory Street, Danbury, Connecticut 06811, pro se.

### ORDER

Mae A. D'Agostino, U.S. District Judge:

**\*1** Plaintiff, Richard Gillich, commenced this action *pro se* on April 9, 2018, against the Delaware County Treasurer, the Delaware County Attorney, the assistant Delaware County Attorneys, Delaware County, and the State of New York. *See* Dkt. No. 1. Plaintiff asserts claims under United States Tort Law and common law in response to Defendants' efforts to foreclose on a property in which Plaintiff has an interest for Plaintiff's non-payment of taxes. Plaintiff filed an application to proceed *in forma pauperis. See* Dkt. No. 2.

On April 30, 2018, Magistrate Judge David E. Peebles issued an Order, Report, and Recommendation denying Plaintiff's IFP application with leave to refile and recommending that Plaintiff's complaint be dismissed with leave to replead for failure to state a claim.

A court may grant a motion to proceed *in forma pauperis* ("IFP") if the party is "unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Although, the court has the duty to show liberality towards pro se litigants, ... there is a responsibility

on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333–34 (N.D.N.Y. 1994) (internal citations omitted); *see, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a party need only present a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned" recitation of the alleged misconduct. *Id.* (citations and quotation omitted). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

**\*2** When a party files specific objections to a magistrate judge's order and report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(c) (2009). However, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir.

2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted) ). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

Having carefully reviewed the April 30, 2018 Order, Report, and Recommendation and the applicable law, the Court finds that Magistrate Judge Peebles correctly denied Plaintiff's motion for leave to proceed IFP and recommended that the Court should dismiss Plaintiff's complaint in its entirety. Magistrate Judge Peebles correctly determined that Plaintiff's complaint was too ambiguous and nonsensical to allow the Court to analyze any purported cause of action. Dkt. No. 6 at 9. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991). Accordingly, the Court also adopts Magistrate Judge Peebles' recommendation that Plaintiff be permitted an opportunity to amend his complaint.

Although Plaintiff filed objections to Magistrate Judge Peebles' Order, Report, and Recommendation, these objections amount to little more than nonsense and recitals of the accusations levied in the complaint. *See* Dkt. No. 7. Plaintiff does not allege any facts in his objections that indicate any error on the part of Magistrate Judge Peebles in his Order, Report, and Recommendation, but instead merely protests the findings of law by restating allegations contained in his initial complaint. *Id.*

After carefully reviewing Magistrate Judge Peebles' Order, Report, and Recommendation, Plaintiff's submissions, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Order, Report, and Recommendation is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint is dismissed with leave to replead; and the Court further

 **\*3** **ORDERS** that Plaintiff shall file his amended complaint within **THIRTY (30) DAYS** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of this Order, the Clerk of the Court shall enter judgment in Defendants' favor without further order of this Court and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2926302

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2454193
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Philip GLOVER, Plaintiff,

v.

Glenn S. GOORD, et al., Defendant.

No. 9:06-CV-1037 (LEK/DEP).
|
Aug. 22, 2007.

**Attorneys and Law Firms**

PHILIP GLOVER, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Office of the Attorney General, Syracuse Regional Office, Maria Moran, Esq., Assistant Attorney General, of Counsel, Syracuse, NY, for Defendants.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on July 3, 2007, by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 20).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED. R. CIV. P. 72(b), in compliance with L.R. 72.1. No objections have been raised in the allotted time with respect to Judge Peebles' Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 20) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED** that Defendant Goord's Motion to dismiss (Dkt. No. 16) is **GRANTED;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED as against Defendant Goord,** without prejudice to the right to replead; and it is further

**ORDERED** that the Motions of Defendants Canfield and Coniglio to transfer the action to the Western District of New York (Dkt.Nos.8, 16) are **GRANTED;** and it is further

**ORDERED** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, U.S. Magistrate Judge.

Plaintiff Philip Glover, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this civil rights action against Glenn S. Goord, the former Commissioner of the New York State Department of Correctional Services ("DOCS"), and two physicians-one a DOCS employee stationed at the Elmira Correctional Facility, and the other an orthopedic surgeon at the Wyoming County Community Hospital-alleging deprivation of his rights under the Eighth Amendment to the United States Constitution. In his complaint, plaintiff asserts that during the course of treatment of his broken arm, extending over a significant period and requiring at least two surgeries, defendants were deliberately indifferent to his serious medical needs, resulting in his experiencing cruel and unusual punishment. Plaintiff's complaint seeks recovery of compensatory and punitive damages.

In response to plaintiff's complaint, the defendants have moved seeking its dismissal, claiming improper venue or, in the alternative, a transfer of the action to the Western District of New York. In that motion, defendant Goord also requests dismissal of plaintiff's claims against him based upon lack of personal involvement. For the reasons set forth below, I recommend that defendant Goord's motion to dismiss for lack of personal involvement be granted, and that the action be transferred to the Western District of New York, where the

remaining defendants are located and the events relevant to plaintiff's claims took place.

## I. *BACKGROUND* [1]

**\*2** Plaintiff is a New York State prison inmate entrusted to the custody of the DOCS. At the times relevant to his claims, plaintiff was confined within the Elmira Correctional Facility ("Elmira"). On or about May 30, 2004, while at Elmira, plaintiff suffered a broken arm. As a result of his examination of the injury Dr. Wesley Canfield, a DOCS physician at Elmira, determined that Glover needed to undergo the surgical insertion of a K-wire and screw in order to repair the break. Arrangements were therefore made for surgery, to be performed by Dr. Gerald Coniglio at the Wyoming County Community Hospital.

Following his operation, which was performed on July 13, 2004, and extending until October 20, 2004, plaintiff experienced severe pain and ongoing leakage of infected puss at the site of his surgery. According to the plaintiff, he was examined by defendants Canfield and Coniglio "on numerous occasions" to address the problems with his arm and ascertain the cause of his pain and infection. After several consultations, a second operation was scheduled to be performed on October 20, 2004, again at the Wyoming County Community Hospital. In that second operation, which plaintiff maintains was performed despite testing revealing that he had a high glucose level, Dr. Coniglio removed the K-wire.

Following his second operation, plaintiff's arm continued to leak infected puss. Plaintiff was again examined by defendants Canfield and Coniglio multiple times between October 20, 2004 and the end of that year. After determining that stronger antibiotics had failed to cure plaintiff's arm, medical officials scheduled a third operation.

Before the third scheduled surgery could take place, plaintiff was examined by a Dr. Angus, at the Arnot Ogden Medical Center, located in Elmira, New York, in connection with an apparently unrelated potential circumcision. Noting plaintiff's high level of glucose, Dr. Angus refused to perform that procedure. When Dr. Angus alerted defendants Canfield and Coniglio of plaintiff's high glucose level, they immediately prescribed metformin and glipizide for level two diabetes. Once those prescription drugs were administered, the wound on plaintiff's arm healed within two weeks.

In November of 2005 Dr. Richard Boch x-rayed plaintiff's arm. Upon reviewing the resulting x-rays, Dr. Boch determined that the screw placed in Grover's arm was too large, and additionally that it was inserted backwards. Dr. Boch subsequently removed the screw and placed it in a medical evidence bag.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on August 28, 2006, alleging that by their actions defendants were deliberately indifferent to his serious medical needs in violation of his constitutional rights under the Eighth Amendment. Dkt. No. 1. In response to plaintiff's complaint, defendants have lodged two separate motions seeking dismissal of the action on the ground that it is improperly venued in this district or, alternatively, requesting a transfer of the action to the Western District of New York. [2] Dkt. Nos. 8, 16. Defendant Goord also seeks dismissal of plaintiff's claims against him based upon the lack of his personal involvement in the constitutional violations alleged. *Id.* Plaintiff has since responded to both motions, arguing that because defendant Goord is alleged to have directly supervised the defendants in the action at the relevant times, and was purportedly required to approve all medical procedures performed, there is an adequate basis for finding personal liability against him. Plaintiff also asserts that the Northern District of New York is an appropriate venue, but requests a transfer of the action to the Western District of New York in the event that the court agrees that venue in this district is inappropriate. Dkt. Nos. 14, 19.

**\*3** The pending dismissal motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Dismissal Motion Standard*

Plaintiff's motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon the court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as

that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty,* 490 F.3d 143, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly,* 127 S.Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly,* 127 S.Ct. at 1969, 1974.

**\*4** When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97

S.Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

### B. *Sufficiency of Plaintiff's Allegations Against Commissioner Goord*

In his motion, defendant Goord argues that plaintiff's complaint is devoid of any allegations of his involvement in, or even awareness of, the constitutional violations alleged. Defendant Goord maintains that because plaintiff's claim appears to be grounded solely on the theory of *respondeat superior*-an assumption largely confirmed by plaintiff's opposition papers-he is entitled to dismissal of plaintiff's complaint based upon lack of personal involvement.

Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal,* 2007 WL 1717803, at *6; *see also*

*Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

**\*5** When viewed in isolation, the allegations set forth in plaintiff's complaint are completely devoid of any connection between Commissioner Goord and plaintiff's alleged injuries. Plaintiff simply notes that defendant Goord was the Commissioner during the relevant time period, and was therefore "responsible ultimately for [his] care, custody, and control, and under the respondent superior doctrine is liable for actions of his respondents who act out of the color of state law." Complaint (Dkt. No. 1) ¶ 6. These allegations are facially insufficient to implicate Commissioner Goord in the constitutional violation alleged, since they fail to allege a tangible connection between his actions and plaintiff's alleged injuries. *See, e.g., Gill v. Mooney,* 824 F.2d 192, 196 (2d. Cir.1987) (finding dismissal appropriate where plaintiff did no more than allege that defendant was in charge of prison); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (same).

In his response dated Feb. 2, 2007, in opposition to Commissioner Goord's dismissal motion, plaintiff writes that he is "including Commissioner Goord; under the color of State Law because Defendants Dr. Wesley Canfield; and Defendant Gerald Conglio; Is [sic] under the direct supervision of Commissioner Goord." Plaintiff's Affidavit (Dkt. No. 14) ¶ 1. From this it appears that plaintiff is attempting to justify the inclusion of Commissioner Goord in the action based solely on his supervisory position over defendants Canfield and Coniglio. This allegation alone is insufficient to implicate defendant Goord in the constitutional violation alleged, since it fails to establish a nexus between Commissioner Goord and the alleged injuries. "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson,* 347 F.3d at 435 (quoting *Ayers,* 780 F.2d at 210).

In his later response, filed on May 2, 2007, in opposition to defendant Canfield's dismissal motion, plaintiff interjects a new argument, asserting that

> [a]ll medical procedures done in New York State Department Correctional Services; Must first be approved by the Commissioner of Corrections; Who was Glenn S. Goord at the time of both of Plaintiffs operations; So therefore

> Commissioner Goord was Directly involved. And should be kept on as a defendant. [sic]

Plaintiff's Affidavit (Dkt. No. 19) ¶ 2(C). [3] This statement moves well beyond the original assertions set forth in plaintiff's complaint. From this, plaintiff's position now appears to be that because Commissioner Goord would have had to approve any medical procedure before the plaintiff could undergo medical treatment for his arm injury, he was thus personally involved in the treatment decisions at issue.

Plaintiff's assertion regarding Commissioner Goord's authority to approve all medical procedures which, despite the court's skepticism, must be accepted as true for purposes of defendants' motion, gives room for pause. Such an allegation would potentially form the basis for a finding of personal involvement in a situation, for example, where an inmate plaintiff alleges the complete denial of medical treatment. Thus, by way of illustration, had plaintiff alleged that additional surgery was recommended, but denied by the DOCS, then defendant Goord's liability could potentially be implicated under the circumstances now asserted by the plaintiff. In this instance, by contrast, plaintiff's claim is not that he has been denied requested surgery, but rather that the surgeries were performed negligently and that his operating and treating doctors failed to discern the existence of a high glucose level and to prescribe medication to eliminate his infections. It is difficult to imagine how Commissioner Goord's authority to approve medical procedures could expose him to personal liability in this setting. In deference to plaintiff's *pro se* status, however, and to permit clarification of the basis for plaintiff's claims of personal involvement on the part of defendant Goord, as well as to allow defendant Goord to respond to and defend against that claim, I recommend that plaintiff's claims against defendant Goord be dismissed for lack of personal involvement, though without prejudice and with leave to replead.

C. *Improper Venue* [4]

**\*6** In their motions, defendants assert that venue in this action is improperly laid in the Northern District of New York, and that as such they are entitled to dismissal of plaintiff's complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. As an alternative to dismissal, defendants request that the matter be transferred to the Western District of New York. Plaintiff opposes defendants' dismissal motion

but, in the event of a finding of improper venue, urges that the action be transferred to the Western District.

Venue in an action such as this is governed by 28 U.S.C. § 1391(b), which provides, in pertinent part, that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred....

28 U.S.C. § 1391(b). In the event of a finding that venue is improper, a court is empowered to dismiss the action or, alternatively, if the interest of justice dictates, to transfer the case to any district in which it could have been brought. 28 U.S.C. § 1406(a); *see also Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465-67, 82 S.Ct. 913, 915-16 (1962).

Since I have already determined that Commissioner Goord's motion to dismiss based on lack of personal involvement should be granted, the factors informing the venue examination now focus upon the residence of defendants Canfield and Coniglio, as well as where the relevant events occurred. Plaintiff's complaint lists defendant Canfield's address as Elmira, Chemung County, New York. It further lists defendant Coniglio's address as Warsaw, Wyoming County, New York. At all times relevant to this action, plaintiff was incarcerated at the Elmira Correctional Facility, located in Elmira, Chemung County, New York. The two surgeries and related medical treatment at issue in plaintiff's complaint took place at the Wyoming County Community Hospital in Warsaw, Wyoming County, New York. Both Chemung and Wyoming Counties are located within the Western District. Since it appears that the Western District is the appropriate forum in which this case, as currently configured, should be litigated, and both parties have requested a transfer in the event of such a finding, I recommend that this matter be transferred to that district as the most appropriate forum for litigation of plaintiff's claims.[5]

*See, e.g., Chet Baker Enterprises, L.L.C. v. Fantasy, Inc.,* 257 F.Supp.2d 592, 595-98 (S.D.N.Y.2002).

IV. *SUMMARY AND RECOMMENDATION*
Plaintiff's complaint in this action, which alleges that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment, fails to demonstrate the requisite personal involvement of former Commissioner Goord in the constitutional violation alleged. Accordingly, I recommend that defendants' motion to dismiss plaintiff's claims against defendant Goord be granted, with leave to replead.

**\*7** Turning to defendants' venue-based motion, because the remaining defendants reside in the Western District of New York, and the relevant events occurred there, I recommend transfer of the action to that district.

Based upon the foregoing it is hereby

RECOMMENDED that defendant Goord's motion to dismiss (Dkt. No. 8) be GRANTED, and that plaintiff's complaint be dismissed as against defendant Goord, without prejudice to the right to replead within an appropriate, specified period of time; and it is further

RECOMMENDED that the motions of defendants Canfield and Coniglio to transfer venue (Dkt.Nos.8, 16) be GRANTED, and that the action be transferred to the Western District of New York.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2454193

**Footnotes**

1    In light of the procedural posture of the case, the following recitation is drawn principally from plaintiff's complaint, the allegations of which are accepted as true for purposes of defendants' motion. *See Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

2    The first dismissal motion, filed on January 11, 2007, was interposed on behalf of defendants Goord and Coniglio, the only two defendants who until that point in time had been served. Dkt. No. 8. On February 5, 2007, after being served with the summons and complaint in the action, defendant Canfield moved seeking similar relief. Dkt. No. 16.

3    Although plaintiff raises arguments relating to Commissioner Goord's dismissal motion in his papers in response to defendant Canfield's later motion, I will consider the argument nonetheless. *Cf. Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (holding that a *pro se* complaint, "however inartfully pleaded," must be held to less stringent standards than formal pleadings drafted by lawyers).

4    While as a magistrate judge I lack the authority, absent consent of the parties, to order dismissal of an action, a venue transfer is regarded as a non-dispositive matter which falls within the scope of my non-consensual jurisdiction under 28 U.S.C. § 636(b) (1)(A). *See White Mop Wringer Co. of Canada Ltd. v. BT Capital Partners, Inc.,* No. 95-CV-565, 1997 WL 222380, at *1 (N.D.N.Y. Apr. 29, 1997) (Pooler, J.); *Pemrick v. Stracher,* No. 90-CV-849, 1992 WL 697636, at *1 (N.D.N.Y. Mar. 27, 1992) (McAvoy, C.J.); *see also Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc.,* No. CV 99-2491, 2000 WL 33155640, at *1 (E.D.N.Y. Sept. 15, 2000) (decision of magistrate judge ordering a venue transfer under 28 U.S.C. § 1404(a)); *Tenen v. Winter,* 15 F.Supp.2d 270 (W.D.N .Y.1998) (decision by district judge affirming the order of a magistrate judge denying a motion for a change of venue). Because defendants' motion to transfer venue is raised in conjunction with their motion to dismiss, however, I have chosen to format my response to that motion as a recommendation to Judge Kahn.

5    Even if defendant Goord remained in the action, the court would nonetheless retain the authority to transfer the case to the Western District of New York under, *inter alia,* 28 U.S.C. § 1404(a) as the far more convenient forum for litigation. *Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.,* 774 F.Supp. 858, 868 (S.D.N.Y.1991). When considering whether to order a transfer under a provision such as section 1404(a), a court must weigh several relevant factors, including 1) the place where the operative facts occurred; 2) convenience of the parties; 3) convenience of witnesses; 4) the relative ease of access to sources of proof; 5) the availability of process to compel attendance of unwilling witnesses; 6) plaintiff's choice of forum; 7) the forum's familiarity with the governing law; and 8) trial efficiency and the interests of justice. *Id.* (citations omitted); *see Excelsior College v. Frye,* 306 F.Supp.2d 226, 231 (N.D.N.Y.2004) (Hurd, J .). Courts routinely transfer cases when the principal events occurred, and accordingly the key witnesses are located, in another district. *Viacom,* 774 F.Supp. at 868 (citing *Computer Horizons Corp. v. Knauer,* 483 F.Supp. 1272, 1273 (S.D.N.Y.1980)).

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1091138
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dorian RAYSOR, Plaintiff,
v.
Christopher BRACCO et al., Defendants.

3:24-CV-1520 (DNH/ML)
|
Signed 04/22/2026

**Attorneys and Law Firms**

DORIAN RAYSOR, Plaintiff, Pro Se, 25-B-2416, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902

KURT SCHRADER, Defendant, Pro Se, [1] 612 Sunset Drive, Endwell, NY 13760

WLADIS LAW FIRM, P.C., Attorneys for City Defendants, P.O. Box 245, Syracuse, NY 13214, TIMOTHY J. LAMBRECHT, ESQ.

Joshua T. Terrell, Broome County Attorney's Office, Binghamton, NY, for Defendants, Broome County Attorney's Office, Binghamton, NY, for Defendant.

**DECISION & ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

**\*1**  On October 16, 2024, *pro se* plaintiff Dorian Raysor ("plaintiff") filed this 42 U.S.C. § 1983 action alleging that defendants Binghamton Police Investigator Christopher Bracco, Correction Officer Sarah Fendick, and Attorney Kurt Schrader violated his constitutional rights in connection with an arrest and subsequent criminal proceedings against him in state court. Dkt. No. 1. Thereafter, plaintiff filed an amended complaint as of right. Dkt. No. 9 ("Am. Compl."). After a series of delays, Dkt. Nos. 22, 25, 27, 30, the assigned magistrate judge instructed plaintiff to request the assistance of the U.S. Marshal Service with completing service upon defendants, Dkt. No. 31.

On September 18, 2025, defendant Bracco appeared through counsel and moved to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6). Dkt. No. 42. Defendant Schrader, an attorney proceeding *pro se*, separately moved to dismiss. Dkt. No. 46. Plaintiff opposed both motions. Dkt. No. 48. [2] Thereafter, plaintiff also filed a motion for leave to further amend, attaching a proposed amended complaint. Dkt. No. 52-2 ("Proposed Second Am. Compl.").

The three motions have been fully submitted and will be considered on the basis of the submissions without oral argument.

**II. BACKGROUND**
The following facts are taken from the operative amended complaint and, where relevant, plaintiff's proposed second amended complaint, and are assumed true for the purpose of resolving the pending motions.

Plaintiff is an individual who, at all relevant times, was subject to investigation and criminal proceedings initiated by defendant Bracco. Am. Compl. at 1–3. [3] Defendant Bracco is a law enforcement officer employed by the Binghamton Police Department who was involved in the investigation and arrest of plaintiff. Proposed Second Am. Compl. at 2. Defendant Schrader is an attorney who, through the Broome County Court Appointed Counsel Program, represented plaintiff in connection with the underlying criminal proceedings. *Id.*

Plaintiff was arrested on May 6, 2024, following an investigation conducted by Bracco. Am. Compl. at 1–3; Proposed Second Am. Compl. at 3–6. Plaintiff alleges that Bracco lacked a lawful basis to initiate the arrest and that the charges brought against him were not supported by probable cause. *See generally id.* Specifically, plaintiff alleges that Bracco, while conducting a search "for the FBI," effected the arrest after observing plaintiff reaching for a phone beneath his shirt. Proposed Second Am. Compl. at 3–6.

**\*2**  Plaintiff further alleges that defendants engaged in misconduct in connection with his detention at the Broome County Correctional Facility. *See generally* Proposed Second Am. Compl. Following his arrest, plaintiff was detained and had interactions with correctional staff. *Id.* at 6–8. At that time, plaintiff alleges that defendant Fendick placed plaintiff in solitary confinement pursuant to a "false report" and that prison staff restricted his access to the prison's law library. *Id.* at 8.

Plaintiff was represented by defendant Schrader during the course of the criminal proceedings following his arrest. Am. Compl. at 4–6; Proposed Second Am. Compl. at 2. Plaintiff alleges that Schrader acted improperly in connection with that representation and participated in the alleged violations of his rights. *See id.*

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S at 678, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

As an initial matter, plaintiff is *pro se*. As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *Hogan v. Fischer*, 738 F.3d 509, 519 (2d

Cir. 2013). "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

This liberal construction is grounded in the recognition that *pro se* litigants, by virtue of their lack of legal training, are more likely to forfeit important rights inadvertently. Accordingly, courts must "make reasonable allowances" to protect such litigants from the consequences of procedural missteps. *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

**\*3** That said, the Court's solicitude toward *pro se* litigants is not without limits. The Second Circuit has made clear that "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

Liberally construed, plaintiff's operative and proposed second amended complaints assert several claims under 42 U.S.C. § 1983 arising from his arrest, prosecution, and related state-court proceedings. Plaintiff appears to assert the following claims: (1) a Fourth Amendment claim for unlawful arrest against defendant Bracco; (2) a Fourth Amendment claim for excessive force based on the circumstances of plaintiff's arrest against defendant Bracco; (3) First Amendment claims alleging the denial of his rights to freedom of speech, petition, and redress of grievances against defendant Fendick; (4) Sixth Amendment claims alleging the denial of effective assistance of counsel and the right to a fair trial against defendant Schrader; (5) Eighth and/or Fourteenth Amendment claims concerning plaintiff's treatment while in custody, which the Court construes as asserted against defendant Fendick; and (6) a claim for malicious prosecution under § 1983. *See generally* Proposed Second Am. Compl. To the extent plaintiff separately alleges "due process" violations or "malicious conduct," those allegations are properly analyzed as part of the foregoing claims rather than as independent causes of action. *Id.*

Defendants Bracco and Schrader have moved to dismiss the operative amended complaint. *See* Defs.' Mems., Dkt. Nos. 42, 46. First, Bracco has moved to dismiss the amended complaint insofar as it asserts claims against him. *See* Def. Bracco's Mem., Dkt. No. 42 at 4–10. In particular, Bracco argues: (1) the amended complaint fails to satisfy the pleading

requirements of Federal Rule of Civil Procedure 8 because it is "rambling," "incoherent," and does not provide fair notice of any cognizable claims; (2) the allegations fail to state a plausible claim for relief under Rule 12(b)(6); (3) to the extent plaintiff seeks damages arising from his arrest and conviction, such claims are barred by the *Heck v. Humphrey* doctrine; and (4) plaintiff should not be granted leave to amend in light of his repeated failure to comply with procedural rules and prior opportunities to replead. *Id.* Second, Schrader has also moved to dismiss the amended complaint insofar as it asserts claims against him for substantially the same reasons set forth in defendant Bracco's memorandum. *See generally* Def. Schrader's Mem.

Where, as here, the Court is presented with motions to dismiss and a request for leave to amend (or to further amend), it must determine whether the operative or proposed pleading states a viable claim and, if not, whether further amendment would be warranted.

In evaluating whether leave to amend should be granted, courts in this Circuit often streamline their analysis by considering whether the proposed amended pleading would survive a motion to dismiss. *See Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 386 (N.D.N.Y. 2023); *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 358 (N.D.N.Y. 2017).

 **\*4**  It is well established that leave to amend may be denied where amendment would be futile. *See Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). An amendment is futile if the proposed pleading "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Accordingly, the Court will evaluate whether the proposed second amended complaint is sufficient to survive a 12(b)(6) challenge.

### A. Claims against Defendant Bracco

Plaintiff's clearest, most recognizable claim is his Fourth Amendment claim against defendant Bracco. Liberally construed, plaintiff alleges that Bracco caused his arrest without probable cause, thereby effecting an unlawful seizure. Proposed Second Am. Compl. at 3–10. Specifically, plaintiff asserts that defendant Bracco "unlawfully stopped/arrested [plaintiff] with less than probable cause." Am. Compl. at 1.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161

(1992). However, "[§] 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

With these standards in mind, the Court turns to plaintiff's Fourth Amendment false arrest claim. "A § 1983 false arrest claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures." *LaFever v. Clarke*, 525 F. Supp. 3d 305, 329 (N.D.N.Y. 2021) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *LaFever*, 525 F. Supp. 3d at 329 (citation omitted).

However, an arrest is privileged if it is based on probable cause. *Weyant*, 101 F.3d at 852. Probable cause to arrest exists when police officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id*.

The existence of probable cause is "a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 231, 232 (1983). In determining the existence of probable cause, the Court "considers the totality of the circumstances, based on a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Guan v. City of N.Y.*, 37 F.4th 797, 804 (2d Cir. 2022) (quotation marks and citations omitted).

Even affording the amended complaint the special solicitude due to *pro se* pleadings, plaintiff fails to allege non-conclusory facts plausibly suggesting the absence of probable cause. He does not plead facts describing the circumstances of the arrest, the information available to Bracco at the time, or any basis from which the Court could reasonably infer that probable cause was lacking. Instead, plaintiff offers only generalized and conclusory assertions challenging the legitimacy of the

arrest, without any supporting factual detail, which is an insufficient basis on which to state a plausible claim for relief.

**\*5** To the extent plaintiff also asserts a claim for excessive force under the Fourth Amendment, that claim likewise fails. The Fourth Amendment prohibits the use of unreasonable force by a police officer in the course of an arrest, and the relevant inquiry is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Plaintiff does not meet this standard because he has not alleged, in any meaningful detail, any facts describing the nature or degree of force used, if any, by whom and when, or even the circumstances under which such force, if any, was applied. Absent such factual allegations, plaintiff fails to state a plausible excessive force claim.

Plaintiff also appears to assert a claim for malicious prosecution under the Fourth Amendment. To state such a malicious prosecution claim under § 1983, a plaintiff must allege "(1) the commencement or continuation of a criminal proceeding against her; (2) the termination of the proceeding in her favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Mitchell v. City of N.Y.*, 841 F.3d 72, 79 (2d Cir. 2016) (cleaned up).

The probable cause standard in the malicious prosecution context is slightly higher than the standard in the false arrest context. *See Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). "Probable cause, in the context of malicious prosecution, has [ ] been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id*.

Even liberally construed, plaintiff fails to state a plausible malicious prosecution claim. Crucially, plaintiff does not allege facts suggesting that the underlying criminal proceeding terminated in his favor. This omission is fatal to his claim. In addition, for the reasons discussed above, plaintiff fails to plausibly allege the absence of probable cause under any standard. Nor does he allege any facts that might give rise to a reasonable inference of malice. Instead, plaintiff offers only conclusory assertions challenging the legitimacy of the prosecution, without any meaningful supporting factual detail, which is insufficient to state a claim under Rule 12(b)(6).

Moreover, if plaintiff seeks to challenge the validity of the criminal proceedings arising from that arrest, such claims are probably barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), at least unless and until plaintiff can show that the underlying conviction or sentence has been invalidated. Under *Heck*, a plaintiff convicted of a crime may not bring a section 1983 suit for damages that "necessarily impl[ies] the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

Plaintiff does not plausibly allege that the underlying criminal proceeding terminated in his favor. In fact, it appears from this record that plaintiff was in fact convicted. If that is accurate, success on his § 1983 claims in this forum would necessarily imply the invalidity of his conviction or sentence, which would be barred by *Heck*.

To the extent plaintiff attempts to assert additional claims against defendant Bracco under the First, Sixth, Eighth, or Fourteenth Amendments, those claims are either wholly conclusory and devoid of factual detail or duplicative of the claims addressed above. Either way, these claims would fail for the same or substantially the same reasons—they are not plausibly alleged.

### B. Claims against defendant Schrader

**\*6** To the extent that plaintiff asserts a § 1983 claim against defendant Schrader, this claim must fail because the amended complaint does not plausibly allege that Schrader acted under color of state law.

As a general matter, private attorneys—even court-appointed attorneys—do not act under color of state law for purposes of § 1983 when performing traditional functions of counsel. *See Shorter v. Rice*, 2012 WL 1340088, at \*4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position."); *Manko v. Steinhardt,* 2012 WL 213715, at \*4 (E.D.N.Y. Jan. 24, 2012) ("It is well-settled that private attorneys and law firms ... do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law").

Plaintiff's conclusory assertions that Schrader participated in wrongdoing or acted in concert with state actors are insufficient absent specific factual allegations showing joint

action or an agreement to violate plaintiff's rights. *See Eggsware v. Doe*, 2022 WL 827640, at \*5 (N.D.N.Y. Feb. 7, 2022) (dismissing plaintiff's § 1983 claims where "there is nothing in the complaint to suggest that any of the potential wrongful actors are 'state actors' or that they are 'collaborating' with state actors"), *report and recommendation adopted*, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022) (Sannes, J.).

In sum, even liberally construed, plaintiff's allegations do not state any plausible claims for relief under § 1983.

### C. Leave to Amend
Notwithstanding these deficiencies, and in light of plaintiff's *pro se* status, the Court will afford plaintiff a <u>final</u> opportunity to file a third amended complaint. "A pro se complaint is to be read liberally" and "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). A court need not grant leave to amend, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Mindful of plaintiff's *pro se* status—and the fact that he has not yet had the benefit of any guidance from the Court, as his prior amendments were either filed as of right or submitted while defendants' motions to dismiss were pending —dismissal with leave to file a third amended complaint as to plaintiff's claims against defendants Bracco and/or Fendick is warranted. Accordingly, plaintiff's claims against those two defendants will be dismissed *with* leave to amend.

Unlike the claims asserted against those defendants, plaintiff's claims against defendant Schrader suffer from a fundamental defect that cannot be cured through repleading. As discussed *supra*, plaintiff seeks to hold Schrader—his attorney in the underlying criminal proceeding—liable under 42 U.S.C. § 1983. However, it is well established that private attorneys, including court-appointed counsel, do not act under color of state law when performing traditional functions of representation. *See Polk County v. Dodson*, 454 U.S. 312, 324–25 (1981); *Manko v. Steinhardt*, 2012 WL 213715, at \*4 (E.D.N.Y. Jan. 24, 2012). Accordingly, plaintiff's claims against defendant Schrader will be dismissed *without* leave to amend.

**\*7** If plaintiff chooses to try to further amend his claims against Bracco and/or Fendick, he is advised that he must include sufficient factual detail to enable the Court to determine whether he has plausibly alleged one or more of his § 1983 claims against one or more of the named defendants under the law governing his claims. To do so, plaintiff must clearly set forth the facts that give rise to his claims, including the dates, times, and places of the alleged acts, and an explanation of how each individual committed each allegedly wrongful act. Plaintiff is cautioned that any amended pleading will replace the previous existing complaints. In other words, the third amended complaint must be a single document that does not rely upon any other materials that have previously been filed with the Court (although he can certainly attach exhibits to the new pleading).

### IV. CONCLUSION
Therefore, it is

ORDERED that

1. The Clerk of the Court is directed to update the docket to reflect *pro se* defendant Schrader's mailing address in accordance with footnote 1;

2. Defendant Bracco's motion to dismiss (Dkt. No. 42) is GRANTED in part and DENIED in part;

3. Defendant Schrader's motion to dismiss (Dkt. No. 46) is GRANTED;

4. Plaintiff's motion for leave to amend (Dkt. No. 52) is GRANTED in part and DENIED in part;

5. Plaintiff's proposed second amended complaint (Dkt. No. 52-2) is ACCEPTED FOR FILING;

6. Plaintiff's second amended complaint is conditionally DISMISSED with partial leave to amend as to Bracco and/or Fendick as set forth above;

7. Plaintiff shall have THIRTY DAYS in which to file a third amended complaint that conforms with the instructions set forth above;

8. If plaintiff timely files a third amended complaint, the Clerk is directed to reset the deadline in which to answer or move against the pleading; and

9. If plaintiff does not timely file a third amended complaint, the Clerk is directed to enter a judgment dismissing this action without further Order of the Court.

The Clerk of the Court is directed to terminate the pending motions and defendant Schrader and set deadlines accordingly.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2026 WL 1091138

---

### Footnotes

1    Defendant Schrader has moved to dismiss *pro se.* Dkt. No. 46. The Clerk of the Court will be directed to update the caption to reflect his mailing address.

2    A notice of appearance was filed by Joshua T. Terrell on behalf of defendant Fendick. *See* Dkt. No. 15. However, the summons issued as to defendant Fendick was returned unexecuted, *see* Dkt. No. 37, and she has not appeared for purposes of the pending motions or otherwise moved to dismiss the amended complaint. Accordingly, the Court will not discuss plaintiff's claims against defendant Fendick at this time.

3    Pagination corresponds with CM/ECF headers.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.